IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL JIMENEZ, *Petitioner*,

*v.*

THE HONORABLE HARRIETT CHAVEZ, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

STATE OF ARIZONA *ex rel.* WILLIAM G. MONTGOMERY, Maricopa
County Attorney, *Real Party in Interest*.

No. 1 CA-SA 13-0299
FILED 4-22-2014

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2012-160146-001 DT
The Honorable Harriett Chavez, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Richard J. Parker
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Susan L. Luder
*Counsel for Real Party in Interest*

**OPINION**

Presiding Judge Peter B. Swann delivered the opinion of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

S W A N N, Judge:

¶1        Michael Jimenez petitions for special action relief from the trial court's denial of his motion to preclude evidence untimely disclosed by the state.  Jimenez contends that the court's failure to preclude the evidence forced him to request a continuance that extended trial beyond the Rule 8 speedy-trial deadline, to enable him to prepare his defense.  We accept jurisdiction and grant relief.  We hold that when the state delays disclosure of inculpatory evidence in violation of Ariz. R. Crim. P. 15.6, a continuance that delays trial beyond a defendant's last day under Rule 8.2 is an improper sanction under Rule 15.7.

## FACTS AND PROCEDURAL HISTORY

¶2        In December 2012, the state indicted Jimenez on charges stemming from an incident the previous month.  All of the physical evidence was impounded on the day of the incident.  The state requested DNA analysis of the evidence in February 2013 and disclosed the request in March.  During two settlement conferences held between March and June the state informed Jimenez that the results of the DNA analysis were forthcoming.

¶3        On June 11, the state informed defense counsel that it was going to move to continue the case because of a trial conflict or, if denied, move to dismiss.  On June 13, the crime laboratory informed the state that the DNA analysis had been assigned to a criminalist on June 7 and that it would be completed by July 2.  On June 17, the state told defense counsel that it had "heard that [the crime laboratory] may get the DNA analysis done soon," but reiterated that it did not anticipate going to trial as scheduled in July due to a trial conflict.  On June 19, the state learned from the crime laboratory that the DNA analysis would be ready by June 28, but it did not immediately notify defense counsel or the court of this fact.

¶4        On June 25, both parties announced "ready for trial" at the final trial management conference and the court ordered trial set for July 2.  At that time, Jimenez's last day under Rule 8 was August 2.

¶5          On July 1, the day before trial was scheduled to begin, the state disclosed inculpatory DNA evidence, having first apprised defense counsel via e-mail that "today we are disclosing the DNA results that were done on Friday [June 28] . . . [and] plan on filing a motion to continue this morning [due to a trial conflict]."

¶6          On July 2, the court granted the state's motion to continue based on a trial conflict, scheduled a status conference for July 29 and reset Jimenez's last day from August 2 to August 9. Jimenez made an oral motion to preclude the new DNA evidence on grounds that it was untimely disclosed, a motion that the trial judge instructed him to address with the case management judge. On July 11, the state proceeded to disclose additional evidence related to ballistics testing.

¶7          On July 29, Jimenez filed a written motion setting forth his arguments for preclusion. The court excluded time until August 16 to allow the parties to brief the issue and reset Jimenez's last day from August 9 to August 27.

¶8          On August 16, the court held oral argument on Jimenez's motion to preclude. Jimenez argued that preclusion of the DNA evidence was the only appropriate sanction for the alleged disclosure violation because, as the court summarized his argument, "the late disclosure will result in a Rule 8 speedy trial violation as the matter will need to be reset so the defense can review, analyze and consider how to handle the newly discovered evidence." Defense counsel argued:

> [B]ased on the scientific nature of this evidence and how extensive it is, there's no way we can review it, hire experts, review what their experts are saying, talk to their experts, and be prepared for trial in an adequate time within his last day.
>
> [Jimenez] does have the right to be tried by August 27th. . . . The position that the State is putting the defense in is having the defense ask the Court for a continuance in light of [the state's] late disclosure when his right to a speedy trial would be violated by any further continuances outside of an agreement by the defense, which Mr. Jimenez does not agree to.

The court excluded time until September 13 to take the matter under advisement and reset Jimenez's last day from August 27 to September 24. Jimenez objected to the court's finding that the trial delay was occasioned

by his motion to preclude, arguing that the root of the delay was the state's untimely disclosure that in turn necessitated the defense motion.

**¶9**        On August 27, the court ruled that the state had "failed to comply with [Rule] 15.6(d) and (c) by not filing a motion supported by an affidavit with the Court requesting leave to extend time for disclosure and to use the material or information." The court, however, denied Jimenez's motion to preclude. The court found that the state had not acted in bad faith because it had requested DNA analysis shortly after the indictment and, despite failing to comply with Rule 15.6, had kept Jimenez apprised that DNA analysis was in progress and expected to be completed before trial. According to the court, "[a]lthough the Defense was surprised by the results disclosed the night before trial, there was no surprise that the results would be disclosed once received." The court reasoned that preclusion was too severe a sanction absent a finding of bad faith or lack of due diligence, that "[t]he sanction of dismissal would only result in further delay as the State could refile charges [and that t]he sanction to hold a party in contempt is not appropriate where there is a lack of bad faith." Ultimately, the court decided that "[t]he only appropriate sanction would be a continuance" and "[i]f the defendant wishe[d] to proceed within the last day [September 24] the matter c[ould] be set to comply."

**¶10**        On August 28, the court held a status conference, at which it found that "extraordinary circumstances exist and that a delay is indispensable" to the interests of justice, scheduled a status conference for October 1 and reset Jimenez's last day from September 24 to November 1.

**¶11**        On September 26, Jimenez moved for reconsideration of his motion to preclude. He emphasized that the untimely disclosure "placed [him] in a position where he had to choose between two constitutional rights, his right to speedy trial [and his right to] present a complete defense," and repeated his argument that "the only proper remedy in that situation is to preclude the evidence."

**¶12**        On October 18, the court heard arguments on Jimenez's motion for reconsideration. Defense counsel explained that it would take the defense at least six weeks to process the DNA evidence and determine whether it should conduct an independent analysis. The court reconsidered its initial ruling and found that

> there was a lack of diligence in seeking the DNA testing and
> that even though it may have initially been requested in like

around January, it wasn't actually assigned until June 7th,
less than a week -- less than a month before the trial date.

The Court was advised previously that [the delay]
was due to backlog but the notes and everything that were
submitted to this court do not reflect backlog. It reflects a
breakdown in communication. The State did not comply
with Rule 15(e) by not -- or .6(e) by not submitting a notice to
the Court with the appropriate affidavit explaining that
delay in the -- getting this critical evidence.

Nevertheless, the court confirmed its previous ruling that the state had
not acted in bad faith, and ultimately affirmed the denial of the motion to
preclude.

¶13 In ruling on the motion for reconsideration, the court
"balance[d] going forward on the merits of the case against the
defendant's due process rights to his speedy trial." It also considered the
critical nature of the evidence, which the state had described as
indispensable to its case. The court reasoned that

as far as the defendant's prejudice, if it's a violation of his
speedy trial rights, he can go forward with his trial but he
would give up the right to complete -- do a complete
preparation as to this late disclosed evidence. But that's his
choice. If he chooses not to investigate that issue and invoke
his speedy trial right, we will go forward without that.
Otherwise, a continuance still remains the appropriate
sanction in order to be fair, if that's what his choice is.

So I'm going to deny the request to preclude the DNA
evidence on that basis. And the defendant can make a
decision on if he wants me to set the trial, the matter for trial,
or if [he] wants to use more time to prepare.

Accordingly, the court granted Jimenez's request for a continuance,
excluded time until the next scheduled status conference on November 18
and reset the last day from November 1 to December 2. This special
action followed.

## JURISDICTION AND STANDARD OF REVIEW

¶14 We accept jurisdiction because this special action presents a
purely legal issue and involves a matter of statewide importance, for

which Jimenez does not have an equally plain, speedy, and adequate remedy by appeal. *See* Ariz. R.P. Spec. Act. 1(a); *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App. 2001).

**¶15** We will not disturb a trial court's decision to impose sanctions for a disclosure violation absent a clear abuse of discretion. *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387 (1993). But "an error of law committed in the process of reaching [a] discretionary conclusion" constitutes an abuse of discretion. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982); *accord State ex rel. Thomas v. Newell*, 221 Ariz. 112, 114, ¶ 6, 210 P.3d 1283, 1285 (App. 2009) ("We will not reverse a disclosure sanction unless it is legally incorrect or unsupported by the facts.").

## DISCUSSION

**¶16** The state violated Rule 15.6 by disclosing inculpatory DNA evidence on the eve of trial.[1] The issue before us is whether the court abused its discretion by denying Jimenez's motion to preclude the untimely disclosed evidence and finding that the appropriate sanction was a continuance.

**¶17** When a party fails to disclose evidence in compliance with Rule 15.6, the court may impose "any sanction it finds appropriate." Ariz. R. Crim. P. 15.7(a). In deciding whether and how to sanction the offering party for a discovery violation, the court should consider (1) the importance of the evidence; (2) the surprise or prejudice to the opposing party; (3) whether the violation was motivated by bad faith; and (4) any other relevant factors. *State v. Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984); *see also* Ariz. R. Crim. P. 15.7(a) ("All orders imposing sanctions shall take into account the significance of the information not timely disclosed, the impact of the sanction on the party and the victim and the stage of the proceedings at which the disclosure is ultimately made.").

**¶18** Because discovery rules "are designed to implement, and not to impede, the fair and speedy determination of cases," the court should seek to apply sanctions that affect the evidence and the merits of

---

[1] Indeed, during oral argument before this court the state repeatedly conceded that it had violated Rule 15.6 and that sanctions were warranted under Rule 15.7.

the case as little as possible. *Smith*, 140 Ariz. at 359, 681 P.2d at 1378 (citation omitted). Preclusion is an appropriate remedy only if no less stringent sanctions will suffice. *State v. Cota*, 229 Ariz. 136, 149, ¶ 59, 272 P.3d 1027, 1040 (2012); *State v. Smith*, 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979) ("Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice."). However, "a discovery sanction should be proportionate to the harm caused. And the sanction should cure that harm to the maximum practicable extent." *State v. Krone*, 182 Ariz. 319, 322, 897 P.2d 621, 624 (1995).

¶19 In *Krone*, the defendant moved for a continuance or preclusion of a videotape that the state disclosed a few days before trial. 182 Ariz. at 320, 897 P.2d at 622. Our supreme court held that the trial court erred by denying both of the requested sanctions, reasoning that either one would have cured the harm of the untimely disclosure but "[t]he action taken -- to tell the defendant to examine the tape between the start of trial and the day it was shown -- was not adequate." *Id.* at 322-23, 897 P.2d at 624-25. The court explained that "[a] continuance would either have caused a problem or it would not. If not, then it would have given the defense an opportunity to meet the force of the new exhibit. *If a delay would have caused hardship, then the tape should have been precluded.*" *Id.* at 322, 897 P.2d at 624 (emphasis added). In *State v. Moody*, the court emphasized that its "determination that the video [in *Krone*] should have been precluded was based on the importance of that evidence: . . . without the [video], 'there likely would have been no jury submissible case against Krone.'" 208 Ariz. 424, 454, ¶ 115, 94 P.3d 1119, 1149 (2004) (quoting *Krone*, 182 Ariz. at 322, 897 P.2d at 624).

¶20 In this case, the untimely disclosed DNA evidence was undoubtedly important, but it was not essential to the state's case. The state argued that it could not proceed to trial until the results were available and the trial court agreed that "[t]here is no question that the DNA evidence is critical evidence." But when the state unconditionally confirms its readiness for trial, it represents to the court that it has the evidence it needs to proceed. We will not interpret such an avowal as containing an unspoken condition that undisclosed evidence not yet in the state's possession is *necessary* for trial to proceed. Even if the state anticipated that a trial conflict would independently continue the case, it would not have been proper to affirm readiness for trial. We therefore interpret the state's avowal to mean that it was prepared to proceed to trial on the scheduled date without the DNA evidence, and reject its more recent assertion that the evidence was essential to its case.

¶21 There can also be little doubt that disclosure of such critical evidence less than 24 hours before trial constituted "surprise." Although the state kept Jimenez apprised that it was conducting DNA analysis in the months before trial, Jimenez was certainly surprised by the disclosure of the inculpatory results on the eve of trial after the state had announced that it was ready for trial a week earlier. By June 19, the state knew that the DNA results would not be available until June 28, yet it did not inform Jimenez or the court of this fact at the June 25 trial management conference and instead announced ready.

¶22 When the court denied Jimenez's motion to preclude and found that a continuance was the only appropriate sanction, Jimenez was prejudiced because he was improperly forced to make a choice between (1) waiving his right to a speedy trial by requesting a continuance for a date beyond his last day, and (2) sacrificing his right to be represented by counsel with sufficient opportunity to prepare for trial. *See* Ariz. R. Crim. P. 8.2(a)(1) (in-custody defendant has right to be tried within 150 days of arraignment); *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (recognizing defendants' right to effective assistance of counsel). We have no reason to doubt defense counsel's contention that the extensive and scientific nature of the state's inculpatory DNA evidence made it impossible to proceed to trial within the time frame remaining of Jimenez's speedy-trial window, and the state never contested that contention. Further, we agree with defense counsel's argument that the trial delay was occasioned by the state's untimely disclosure, not by Jimenez's motion to preclude. Had the state not made an untimely disclosure, Jimenez would not have moved for preclusion and the court would not have needed to delay trial beyond the continuance it granted due to the state's trial conflict. Lastly, even if the state did not operate in bad faith, it plainly did not act diligently. Had the state exercised diligence, it would have timely inquired into the status of its DNA analysis and either hastened to produce timely disclosure or sought an extension of the disclosure date under Rule 15.6(e). It did neither.

¶23 In these circumstances, a continuance can hardly be considered a "sanction" against the state when it gave the state exactly what it sought and forced Jimenez to forgo his right to a speedy trial. Indeed, if Rule 8 is to have any meaning at all, a "sanction" against the state cannot ordinarily work to deprive the defendant of speedy-trial rights. In this case, the trial delay caused by granting a continuance constituted a hardship to Jimenez sufficient to justify preclusion. *See Krone*, 182 Ariz. at 322, 897 P.2d at 624. We therefore hold that granting a continuance under Rule 15.7 was an improper sanction for the state's

untimely disclosure of inculpatory evidence in violation of Rule 15.6, because the continuance delayed trial beyond Jimenez's last day under Rule 8.2. In view of the court's rejection of dismissal as a sanction, preclusion was the only appropriate sanction because it was the only punishment that fit the wrongdoing. *Cf. State v. Tucker*, 133 Ariz. 304, 309, 651 P.2d 359, 364 (1982) ("[T]he state's violation of appellant's right to a speedy trial was not minor. If we are to preserve the efficacy of the right to a speedy trial in Arizona, we must reverse the conviction and dismiss the prosecution with prejudice when presented with facts such as those in the instant case.").

## CONCLUSION

**¶24** For the foregoing reasons, we reverse the trial court's orders denying Jimenez's motion to preclude the untimely disclosed evidence and remand for further proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
FILED: MJT