NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

TYREL WILLIAM PRICE, *Appellant.*

No. 1 CA-CR 21-0013
FILED 12-14-2021

---

Appeal from the Superior Court in Mohave County
No. S8015CR202000330
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

_____

**H O W E**, Judge:

**¶1**　　　　Tyrel William Price appeals his convictions and sentencing for aggravated assault and assault, arguing that the trial court erred in precluding his alibi witness from testifying and admitting the 9-1-1 recording at trial. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　Around 10 p.m. in March 2020, two brothers went to a girlfriend's house to babysit her children while she was in the hospital. A few minutes after arriving, they were speaking with the oldest child when Price and his co-defendant, the girlfriend's sister Amber Rucker, showed up at the house and began shouting profanities and threatening the brothers. The brothers had seen Rucker before but did not know Price, and they retreated into the house. Price and Rucker began yelling and threatened to torch the brothers' car, prompting the brothers to go back outside. After they told Price and Rucker to leave, Price and Rucker attacked them. Price knocked one brother down and injured the other with a crowbar. Price and Rucker then kicked, stomped, and beat the latter. During the fight, the oldest child dialed 9-1-1 at 11:48 p.m. but Rucker allegedly took the phone from her. Rucker shouted profanities and praised Price while he fought with the brothers, stating in part, "You're amazing, dude . . . I f—king love you, dude . . . you're the sh—t," and referring to him as "Ty" and "Tyrel."

**¶3**　　　　Price and Rucker were indicted on three counts of aggravated assault, one count of misdemeanor assault, and one count of criminal damage. Rucker was also indicted on one count of theft from a person. Price was a repetitive offender and on felony release at the time of the offense. Ultimately, he was held without bond after being arrested on a warrant for failing to appear for a pretrial conference. At Price's arraignment, the court warned him that failing to timely disclose a witness or defense could result in precluding that witness or defense at trial. His counsel filed a notice of defenses under Arizona Rule of Criminal Procedure 15.2 but did not list

alibi as a defense. Five months later, he filed a second Rule 15.2 notice, through a new attorney, which included alibi as a defense but did not name the alibi witness.

¶4            Ten days before trial, Price spoke with his counsel about the alibi witness. During a status hearing a week before trial, Price told his counsel that he had spoken with the alibi witness. Later that day, defense counsel disclosed the alibi witness's name and phone number to the State. The prosecutor attempted to contact the witness three times but could not reach her. The State also requested the witness's birthdate to check her background, but defense counsel did not provide it. Before trial, the State moved to preclude the alibi witness based on untimely disclosure that, based on the circumstances, appeared willful. The State argued that disclosing the witness one week before trial did not give it time to find rebuttal witnesses or interview the witness. Price's counsel responded that his office was short-staffed and he had 54 open felony cases, which resulted in his speaking with Price about the alibi approximately 10 days before trial. Counsel disclosed the witness as soon as Price informed him. Price also argued that the court should declare a mistrial or continue the trial instead of precluding the witness because she would provide "vital evidence" and "less stringent sanctions" were available.

¶5            The trial court heard argument on the State's motion the first day of trial. The court allowed the parties to submit a statement of their good faith efforts to resolve the dispute before ruling on the motion. Before the jury was impaneled, Price's counsel noted that he did not expect the alibi witness to testify but that he would want her to testify if she contacted him. During the lunch recess later that day, counsel emailed the prosecutor that Price's alibi witness was available to testify. During an offer of proof, Price's counsel explained that the witness would testify that she picked up Price around 4:30 p.m. on the day in question and drove to Laughlin, Nevada, arriving at a casino around 5:30 or 6:00 p.m., later going to a Starbucks at another hotel, and then gambling at yet another hotel. The witness would have also produced a receipt from a restaurant where the two allegedly dined at 2:00 a.m. the morning after the fight.

¶6            The prosecutor reiterated that the court should preclude the witness because Price had six months to disclose the alibi and the State now would not have time to investigate the alibi or find rebuttal witnesses before it began presenting evidence the next day. The State further argued that Price's failure to disclose was done on "purpose to prevent the State from being able to find rebuttal witnesses," putting the "State in the position of, essentially, not being able to do anything to rebut what . . . is going to be

the biggest, most important defense in this case." Price's counsel argued that preclusion is the "ultimate sanction," the court should impose a lesser sanction, and although counsel disclosed the witness as soon as he found out about her, the parties did not make good faith efforts to resolve the dispute before the State moved to preclude.

¶7        The trial court noted that he had told Price at his arraignment that preclusion would be the consequence if he failed to timely disclose witnesses or defenses. The court explained that a defendant, especially one held without bond, would have the incentive to reveal to his counsel an alibi "as soon as possible" and obtain phone records and video recordings from the places he visited on the day of the offense as evidence to prove that he was not in town and verifiably innocent through objective means. The court noted that one could easily verify the evidence of Price's purported alibi.

¶8        Price did not obtain recordings from his alleged trip to Laughlin, however. The court said that providing a receipt from a restaurant at 2:00 a.m. was "not really an alibi" because it would not establish that Price was not in town at the time in question since a trip from Laughlin to Kingman is about a 45-minute drive. The court stated that it would not continue the trial because the jury was sworn and thus jeopardy attached. The court acknowledged that witness preclusion is "the least favored sanction under Rule 15.7" but chose to preclude the witness because the defendant had been in custody for five months already and was "obligat[ed] to provide his attorney with alibi witnesses in a timely fashion." The court granted the State's motion and precluded the alibi witness from testifying based on untimeliness.

¶9        At the end of the first day of trial, the State informed the court that it would be offering the 9-1-1 recording as evidence during its case-in-chief the following day pursuant to A.R.S. § 13–3989. The recording helped establish that Price and Rucker were present during the offense. Defense counsel objected to the evidence as hearsay and irrelevant. The prosecutor argued that hearsay exceptions would apply, such as excited utterance, present sense impression, and record of regularly conducted activity. The prosecutor also argued that the recording was relevant because it demonstrated Rucker's demeanor.

¶10        The court listened to the recording and admitted it, finding that the statements on the recording were not hearsay, non-testimonial, and thus did not violate the confrontation clause—though if the statements were hearsay, they would fall under the excited utterance exception

because Rucker's cursing "seem[ed] fairly excited." The State played the recording for the jury. The brothers then testified about the events on the afternoon in question and identified the voice in the 9-1-1 recording as Rucker's. An officer from the Kingman Police Department also testified that the 9-1-1 call helped him identify the male assailant as Price. The jury found Price guilty of two counts of aggravated assault and one count of assault. The court subsequently sentenced him to 1.5 years in prison for unlawful flight, which was to run consecutive to 13.25 years in prison for aggravated assault, which was to run consecutive to 56 days in jail for assault. Price timely appealed.

## DISCUSSION

### I.        Alibi Witness

¶11        Price argues that the trial court abused its discretion in precluding his alibi witness from testifying. We review the trial court's sanction for untimely disclosure for an abuse of discretion. *State v. Moody*, 208 Ariz. 424, 454 ¶ 114 (2004). The trial court abuses its discretion when "no reasonable judge would have reached the same result under the circumstances." *State v. Naranjo*, 234 Ariz. 233, 242 ¶ 29 (2014) (quoting *State v. Armstrong*, 208 Ariz. 345, 354 ¶ 40 (2004)).

¶12        The trial court properly precluded Price's alibi witness from testifying because Price did not timely disclose that he intended to call the witness. In notifying the State of all defenses, the defendant "must specify each person, other than the defendant, that the defendant intends to call as a witness at trial in support of the defense," Ariz. R. Crim. P. 15.2(b)(2), providing "the name and address of each person . . . and any written or recorded statement of the witness," Ariz. R. Crim. P. 15.2(c)(1). The defendant must disclose this information in the superior court "40 days after arraignment, or 10 days after the State's disclosure," whichever occurs first. Ariz. R. Crim. P. 15.2(d)(1).

¶13        In determining sanctions for untimely disclosure, "a court must determine the significance of the information not timely disclosed, the violation's impact on the overall administration of the case, the sanction's impact on the party and the victim, and the stage of the proceedings when the party ultimately made the disclosure." Ariz. R. Crim. P. 15.7(c). The trial court has "great discretion" in sanctioning a party. *State v. Mesa*, 203 Ariz. 50, 55 ¶ 19 (App. 2002). Preclusion is a proper sanction if "no less stringent sanctions will suffice," *Jimenez v. Chavez*, 234 Ariz. 448, 452 ¶ 18 (App. 2014), and if the party made the untimely disclosure willfully, *State v. Ramos*, 239

Ariz. 501, 504 ¶ 9 (App. 2016). *Ramos* presents two components that render witness preclusion for untimely disclosure proper: willfulness and prejudice. This court in *Ramos* held in part that although the alibi witness's testimony was significant to his defense and counsel did not act in bad faith, the trial court's preclusion of the alibi witness was proper because the defendant's untimely disclosure—for nine months until two weeks before trial—was willful and disadvantaged the State in presenting a new defense theory and not providing time to find rebuttal witnesses. 239 Ariz. at 505 ¶¶ 12–13.

¶14 This case is akin to *Ramos*. Although the State conceded that Price's alibi would have been significant to his defense, Price treated the testimony of Price's alibi as if it were insignificant to his defense. He listed alibi as a defense in his second Rule 15.2 notice, but the witness's name was not disclosed. Only one week before trial did he tell his counsel the witness's name and contact information. The court had previously informed Price that not timely disclosing an alibi and other defenses could lead to preclusion of the evidence. In determining the appropriate sanction, the court also considered the effect of Price's late disclosure on the State. The late disclosure disadvantaged the State in not giving it time to find rebuttal witnesses or investigate the alibi. The court additionally noted that a defendant held without bond, such as Price, would disclose an alibi placing him far away from the scene of the crime "as soon as possible" to prove his innocence. Price had opportunity to inform his counsel of the witness. The circumstances therefore warranted finding that Price's untimely disclosure was also willful, thereby justifying preclusion as a sanction. Thus, Price's argument that the court abused its discretion in faulting him for not keeping his counsel informed and that the sanction was not proportional to the harm is unavailing. Because reasonable judges would have reached the same result under the circumstances, the trial court did not abuse its discretion, and we need not consider Price's other arguments—that the court abused its discretion in finding his alibi "was not a good alibi," that the court should have continued the trial, and that a witness's date of birth and the State's inability to reach the witness by phone are invalid bases for preclusion.

## II. 9-1-1 Recording

¶15 Price argues that the trial court erred in admitting the 9-1-1 recording because the statements are testimonial—thereby violating his confrontation rights under the Sixth Amendment of the United States Constitution—and hearsay not subject to an exception. Although we generally review evidentiary rulings for an abuse of discretion, we review

such rulings de novo when they implicate the Confrontation Clause. *State v. Ellison*, 213 Ariz. 116, 129 ¶ 42 (2006).

**¶16**　　　　The trial court did not err in admitting the 9-1-1 recording because the statements are neither hearsay nor testimonial. The statements in the 9-1-1 call are not hearsay because they were not admitted to prove the truth of any matter asserted in the call. Ariz. R. Evid. 801(c)(2). In the recording, Rucker shouted, "You're amazing, dude . . . I f—king love you, dude . . . you're the sh—t," and referred to Price as "Ty" and "Tyrel." The State did not offer these statements to prove that Price was "amazing" but rather as circumstantial evidence that Rucker and Price were at the scene. Further, the trial court did not abuse its discretion in finding that were the statements to constitute hearsay, they would be subject to the excited utterance exception. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ariz. R. Evid. 803(2). The fight between Price, Rucker, and the brothers was a startling event. Rucker was present at the scene and was participating in the fight when she began shouting and encouraging Price under the stress of the fight. The court found that Rucker's use of curse words seemed "fairly excited." Thus, her statements could have also been excepted as excited utterance.

**¶17**　　　　The trial court also did not err in finding that the recording did not violate Price's confrontation rights because the statements are not testimonial. Under the Sixth Amendment's Confrontation Clause, testimonial hearsay is prohibited unless the declarant is unavailable and the defendant had the chance to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). A declarant makes a testimonial statement when they "intend[] or believe[] it might later be used in a prosecution or at a trial." *State v. Damper*, 223 Ariz. 572, 575 ¶ 12 (App. 2010). A declarant's statements during a 9-1-1 call are non-testimonial only when they describe a situation in an ongoing emergency that requires police assistance. *Davis v. Washington*, 547 U.S. 813, 822, 827–28 (2006).

**¶18**　　　　Here, the 9-1-1 call occurred during the fight. Rucker did not speak directly to the 9-1-1 operator about an emergency but instead could merely be heard in the background shouting profanities and encouraging Price. Her statements did not suggest that she intended or believed that they might be used at trial. Price argues that the statements were testimonial because they identified him as the perpetrator and the girlfriend's child was reporting the crime when Rucker made her statements. But these arguments do not encompass the definition of "testimonial." Rucker did not identify Price with the intent or belief that her

statement would be used at trial, and although the child called 9-1-1, Rucker's statements are at issue, not the child's. Therefore, the trial court did not err in admitting and publishing the recording.

## CONCLUSION

**¶19**     For the foregoing reasons, we affirm.

