NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BACILIO BORQUEZ, *Appellant*.

No. 1 CA-CR 23-0506
FILED 07-25-2024

Appeal from the Superior Court in Yavapai County
No. P1300CR202101020
The Honorable Debra R. Phelan, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

C. Kenneth Ray II, P.L.L.C., Prescott
By C. Kenneth Ray II
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

_____

**K I L E Y**, Judge:

**¶1**　　　　Bacilio Borquez appeals his convictions for sexual conduct with a minor and sexual assault. For the following reasons, we vacate and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Viewed in the light most favorable to sustaining the verdict, *see State v. Thompson*, 252 Ariz. 279, 287, ¶ 2 n.3 (2022), the evidence establishes that Borquez and Teresa (a pseudonym) began a romantic relationship in January 2017. Shortly thereafter, Borquez moved into the apartment in Chino Valley where Teresa lived with her son and her minor daughter Beth (a pseudonym).

**¶3**　　　　One day in May 2017, Beth, who was 14 years old, was playing video games in Teresa's bedroom while Teresa was out. Borquez entered the bedroom and told Beth to "take [her] pants off." When she said "no," he "put his body weight on [her] legs and kept them open" while "pulling down" both of their pants. "[S]cared," Beth "froze." Borquez then proceeded to have sexual intercourse with her.

**¶4**　　　　Less than a week later, Beth was laying on a couch in her own bedroom when Borquez entered and again told her to "pull [her] pants down." When Beth refused, Borquez "pulled them off." Although Beth "kept saying no," Borquez "started performing oral" sex on her. The encounter lasted five to ten minutes.

**¶5**　　　　Beth did not tell Teresa about Borquez's conduct, later explaining that she was both worried about hurting her mother and fearful "of how [Borquez] might react."

**¶6**　　　　In October 2017, Teresa was evicted from the Chino Valley apartment. Teresa, Beth, Teresa's son, and Borquez then moved to Redlands, California, where they lived first with Borquez's mother, then at a hotel.

¶7　　　　In November 2017, Beth "start[ed] experiencing stomach pain." Teresa took her to the emergency room, where the two learned that Beth was pregnant. Scared to tell her mother the truth, Beth falsely told Teresa that Beth's then-boyfriend "Carl" (a pseudonym) "might" be the father.

¶8　　　　About two weeks later, Beth and Borquez were alone in the hotel room when he "asked [her] to have sex." When Beth "told him no," Borquez became angry and threatened to tell Teresa that he was the father of Beth's unborn child. When Beth still refused, Borquez "stormed out" and told Teresa that Beth "was having his baby." "[S]hocked," Teresa asked Beth "if [this] was true." Beth admitted that it was.

¶9　　　　Teresa called her parents, who traveled to California to get Teresa and her two children and bring them back to Arizona. Once back in Arizona, Beth told Teresa "the whole story of what happened between her and [Borquez]."

¶10　　　　In April 2018, Teresa took Beth to a pregnancy clinic. After being told how Beth became pregnant, the clinic's director called the police. Teresa and Beth met with a detective, who opened an investigation.

¶11　　　　After Beth gave birth that summer, police obtained DNA samples from Beth and the baby. Police tried to obtain a DNA sample from Borquez but were unable to locate him.

¶12　　　　In July 2021, a grand jury charged Borquez with two class 2 felonies. Count 1 charged Borquez with sexual conduct with a minor under the age of fifteen, while Count 2 charged him with sexual assault on a minor under the age of fifteen. The factual allegations of the two counts were phrased in general terms, alleging only that Borquez "intentionally or knowingly did engage in sexual intercourse or oral sexual contact with" Beth on dates "on or between May 1, 2017 and October 31, 2017." The indictment made no reference to where the charged acts occurred, nor did it allege any other factual details about the charged acts.

¶13　　　　Borquez was arrested several months later. The police obtained a DNA sample from him and submitted it to the Combined DNA Index System ("CODIS"). Based on the CODIS data, Borquez was identified as a "presumptive positive" match for the baby's father. The State disclosed the CODIS match to Borquez in February 2022.

¶14　　　　The trial was set for September 6, 2023. On August 2, 2023, a little over a month before trial, the State requested the court to order the

taking of buccal swabs from Borquez. The prosecutor explained that a new criminalist has been assigned who could not testify to the results of the previously disclosed CODIS DNA evidence, and therefore that a new analysis needed to be conducted. Over Borquez's objection, the court granted the State's motion.

¶15 On August 22, 2023, the State disclosed a 44-page report of the results of the second DNA analysis, which confirmed that Borquez is the child's father. Borquez moved to preclude admission of this second DNA report at trial on grounds of untimeliness, arguing that the "late disclosure" gave him "no opportunity to have an independent analysis completed." Notably, Borquez asserted no basis to preclude the DNA test results other than the purported untimeliness of its disclosure. After argument, the court denied Borquez's motion to preclude the second DNA report as untimely.

¶16 A three-day jury trial was held in September 2023, at which the State called Beth, Teresa, two detectives and a criminologist as witnesses. Beth testified, among other things, about Borquez's two acts of sexual misconduct in May 2017 described *supra* ¶¶ 3-4. When the prosecutor asked, in vague terms, whether "conduct like this" continued to occur "over the next couple of months," Beth testified, "Yes," but did not specifically identify or describe any other incident. She testified, however, that Borquez is the father of her child. Borquez did not object to any of Beth's testimony. Over Borquez's renewed objection to the alleged untimeliness of its disclosure, the second DNA analysis report was also admitted.

¶17 After the State's case-in-chief, Borquez moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20(a)(1), arguing that the State had not presented "sufficient evidence . . . to show that the alleged conduct occurred here in Arizona." In response, the State pointed out that Beth "testified to two specific acts that occurred in Arizona, one that was sexual intercourse that occurred on her mother's bed" while the "second . . . was oral sexual contact" that "occurred on the victim's couch in her bedroom" in the Chino Valley apartment. The court denied Borquez's motion for a judgment of acquittal.

¶18 The defense called no witnesses. While the court and counsel were settling jury instructions and verdict forms, the prosecutor stated, "I'm concerned the jury might be confused what conduct they should be considered for which charge." The prosecutor then moved "to amend the indictment" to reflect that Count 1, the "sexual conduct with a minor charge," referred to the "oral sexual contact in [Beth's] bedroom," while

Count 2, the "sexual assault charge," referred to "sexual intercourse on her mom's bed." Noting that Beth "indicated there were additional contacts apparently between [Borquez] and her" after the two incidents in May 2017, Borquez's counsel agreed not to object to the State's proposed amendment in exchange for the prosecutor's agreement not to bring additional charges based on those uncharged acts. Based on the parties' stipulation, the court granted the motion to amend the indictment to reflect that Count 1 referred to "oral sexual contact occurring on the couch" in Beth's bedroom while Count 2 referred to "sexual intercourse occurring on the mother's bed."

¶19            After the indictment was amended to reflect that Count 1 and Count 2 related solely to the two incidents in May 2017, Borquez's counsel did not move to strike Beth's testimony about Borquez's post-May 2017 conduct, nor did she request an instruction limiting the purpose for which the jury could consider that evidence. Instead, the prosecutor stated, "I think we might need an 'other act' instruction." When the court suggested basing an instruction on the standard "evidence for a limited purpose" and "other act" instructions, *see* Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 23, 24 (6th ed. 2022), the State objected. "We have to be careful," the prosecutor warned, not to instruct the jury that evidence of other acts is "not to be considered." On the contrary, the prosecutor insisted, the jury could properly consider evidence of Borquez's post-May 2017 conduct as "circumstantial evidence" of his guilt of the May 2017 charged offenses.

¶20            After a further exchange between the court and counsel, the court proposed the following instruction:

> Evidence of other acts has been presented. The only acts for your determination are the acts charged in Count 1 and Count 2.

The court acknowledged that the instruction it proposed "doesn't really direct [the jurors] how to consider the other acts or discourage them from considering them." Nonetheless, neither party objected to the instruction proposed by the court, and the court gave that instruction to the jurors.

¶21            In closing argument, the State focused heavily on the DNA evidence proving that Borquez fathered Beth's child even though, as both parties agree, the timing of the child's birth shows she could not have been conceived before October 2017. The prosecutor began her argument by telling the jury, "Bacilio Borquez was 20 years older than his victim at the time he began raping her and once she eventually was impregnated by him." After recounting Beth's testimony about the two incidents in May

2017 that were the subject of Counts 1 and 2 as amended, the prosecutor argued that Borquez "continu[ed]" his behavior after the move to California and that he "obviously wasn't deterred by getting her pregnant." "[D]uring this entire time from May to October," the prosecutor argued, Beth was "under the age of 15," adding, "[s]he didn't turn 15 until the following February when she was already pregnant with his child." Responding to attempts by defense counsel to impeach Beth's testimony on cross-examination, the prosecutor argued,

> Now, defense wants you to believe that [Beth] is a liar. But you know what doesn't lie? Science. DNA does not lie. And we know from the DNA that [Borquez] is the father of [Beth's] baby.
>
> * * *
>
> It's pretty hard for them to be able to formulate a defense in this case when we've got DNA evidence. . . . [T]hey can't really deny that the sexual contact occurred because we've got a baby.

¶22        In her closing argument, defense counsel reminded the jurors that Borquez could not have impregnated Beth until after they moved to California in October 2017. Observing that gestation "is nine months," defense counsel told the jurors that, "if you do the math," "the date of conception" must have been "at the end of October," "after the family [was] evicted" from their Chino Valley apartment.

¶23        The prosecutor argued in rebuttal that whether Borquez impregnated Beth in Arizona or California "has nothing to do with the charges." According to the prosecutor, Beth's pregnancy "is proof . . . that [Borquez] was doing this to her while they were in Arizona." Beth's pregnancy, she summarized, is "circumstantial evidence to show you that this conduct had been occurring" and "that contact ended up getting her pregnant."

¶24        The jury found Borquez guilty as charged. The court sentenced him to two consecutive prison terms of 23 years each.

¶25        Borquez timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

**DISCUSSION**

## A.      The Superior Court had Jurisdiction.

**¶26**        Borquez offers a variety of challenges to his convictions. He argues, first, that his conviction must be vacated and the charges dismissed for lack of "territorial jurisdiction." According to Borquez, the superior court erred in denying his motion for a judgment of acquittal because, he contends, "the child was conceived in California" and therefore the superior court "was without territorial jurisdiction for either charge of the indictment."

**¶27**        We review the denial of a motion for a judgment of acquittal for abuse of discretion. *See State v. McCurdy*, 216 Ariz. 567, 573, ¶ 14 (App. 2007). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (cleaned up). An Arizona court has subject matter jurisdiction over an offense if conduct constituting one or more of its elements occurred in Arizona. A.R.S. § 13-108(A)(1); s*ee also Lay v. Nelson in & for Cnty. of Yuma*, 246 Ariz. 173, 176, ¶ 12 (App. 2019).

**¶28**        Although the indictment originally did not identify the charged acts with specificity, the indictment as amended at trial by agreement of the parties makes clear that Count 1 and Count 2 were based on alleged conduct that occurred in Teresa's apartment in May 2017. Both Teresa and Beth testified that the apartment was in Chino Valley, and no conflicting evidence was presented. In the absence of any evidence that the acts charged in the indictment as amended occurred outside Arizona, the superior court did not abuse its discretion in denying Borquez's motion for a judgment of acquittal based on the purported absence of subject matter jurisdiction.

## B.      Borquez Is Not Entitled to Relief on His Challenge to the Court's Denial of His Motion to Preclude.

**¶29**        Borquez next argues that the State did not timely disclose the second DNA report, and the superior court abused its discretion by denying his motion to preclude it. According to Borquez, the State's disclosure of the report two weeks before trial left him facing a "Hobson's Choice"[1] between moving for a continuance to give him time to obtain a rebuttal DNA expert, thereby sacrificing his "right to a speedy trial," or

---

[1] A "Hobson's choice" is "[a]n apparently free choice that offers no actual alternative." *Hobson's choice*, Webster's II New College Dictionary (1995).

proceeding to trial without adequate time to prepare to meet the DNA evidence, thereby sacrificing his "right to effective assistance of counsel." Although at trial he sought only the preclusion of the report of the second DNA analysis, he argues on appeal that the "inherent unfairness of the State's dilatory action" requires nothing less than the dismissal of the charges with prejudice.

**¶30**　　　　In support of his position, Borquez relies on *Jimenez v. Chavez*, 234 Ariz. 448 (App. 2014). In *Jimenez*, the state disclosed DNA evidence for the first time the day before trial was set to begin. *Id.* at 450, ¶ 5. The defendant moved to preclude the DNA evidence, arguing that he was otherwise prepared for trial and that denying his motion to preclude would force him to request a continuance to allow him "to process the DNA evidence and determine whether" to seek an independent analysis. *Id.* at 451, ¶¶ 6, 12. The superior court agreed that the defendant "was surprised by the [DNA] results disclosed the night before trial," but nonetheless found that "preclusion was too severe a sanction" because the prosecutor had not acted in bad faith. Instead, the court found the "appropriate sanction would be a continuance." *Id.* at 450, ¶ 9. The defendant then filed a special action, and this Court granted relief. "[G]ranting a continuance," the Court held, "was an improper sanction for the state's untimely disclosure of inculpatory evidence" after the disclosure deadline set by applicable court rules. *Id.* at 453, ¶ 23. Indeed, the Court went on, the continuance "can hardly be considered a 'sanction' against the state" since it penalized only the defendant, who was forced "to forgo his right to a speedy trial." *Id.* Under the circumstances, the Court held, preclusion of the late-disclosed evidence, not a trial continuance, "was the only appropriate sanction." *Id.*

**¶31**　　　　*Jimenez* does not support Borquez's request that the charges be dismissed. First, the defendant in *Jimenez* did not request dismissal as a sanction for the untimely disclosure of evidence, and so the *Jimenez* court never addressed the issue. Moreover, unlike the defendant in *Jimenez*, Borquez was not surprised by the disclosure of inculpatory DNA evidence on the eve of trial. On the contrary, Borquez was aware, since the CODIS DNA results were disclosed in February 2022, that the State intended to offer DNA evidence. Further, unlike the prosecution in *Jimenez*, the State here disclosed the report of the second DNA analysis in compliance with applicable court rules. The governing rule requires "[a]ny party who anticipates a need to provide additional disclosure no later than 30 days before trial" to "immediately notify both the court and all other parties of the circumstances and when the party will make the additional disclosure." Ariz. R. Crim. P. 15.6(b). The State complied with this requirement by

motion filed on August 2, 2023. The governing rule also requires that, "[u]nless otherwise permitted, all [required] disclosures" must "be completed at least 7 days before trial." Ariz. R. Crim. P. 15.6(c). The State disclosed the report of the second DNA analysis on August 22, 2023, more than the requisite "7 days before trial." Accordingly, the State did not violate the disclosure deadlines set forth in applicable court rules, and so the court did not abuse its discretion by declining to preclude the report as a sanction. *See State v. Johns*, 1 CA-CR 16-0368, 2018 WL 832853, at *3, ¶ 15 (Ariz. App. Feb. 13, 2018) (mem. decision) (no sanction was warranted for purported untimely disclosure of DNA evidence because the State complied with applicable rules by "provid[ing] notice . . . more than 30 days before the new trial date, that it intended to obtain new buccal swabs" and then "disclosed the new DNA results 13 days before the new trial date.").

**¶32** Most important, unlike the *Jimenez* court, the court here did not continue the trial following the State's disclosure of the report of the second DNA analysis. The timing of the State's disclosure did not, therefore, affect Borquez's speedy trial rights. And because a claim of ineffective assistance of counsel cannot be raised on direct appeal, *see State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007), we decline to consider Borquez's suggestion that his counsel was unprepared at trial to effectively address the DNA evidence. We therefore reject Borquez's contention that the timing of the State's disclosure of the report of the second DNA analysis entitles him to the dismissal of the charges.

## C.     Evidence of Borquez's Sexual Misconduct After May 2017 Was Improperly Admitted.

**¶33** Borquez next argues that the superior court erred by admitting evidence of uncharged wrongful acts without making the admissibility findings required by Arizona Rule of Evidence ("Rule") 404.

**¶34** We generally review a court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Vega*, 228 Ariz. 24, 26, ¶ 6 (App. 2011). In the absence of a timely objection, however, the admission of evidence is reviewed only for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶35** Borquez challenges the admission at trial of evidence that he "continued to sexually assault" Beth after the two incidents in May 2017

that were charged in Count 1 and Count 2 as amended.[2] Acknowledging that he never objected to the admission of this evidence, he asks this court to find that the admission of the evidence constituted fundamental error requiring reversal of his conviction. We begin our "fundamental error" analysis by determining whether error occurred. *Escalante*, 245 Ariz. at 140, ¶ 12.

¶36 Evidence of a defendant's uncharged wrongful acts may properly be admitted if they are "intrinsic" to the charged offense. *State v. Nordstrom*, 200 Ariz. 229, 248, ¶ 56 (2001). A defendant's acts are "intrinsic" to the charged conduct if they "are so closely related to the charged act that they . . . are part of the charged act itself." *State v. Ferrero*, 229 Ariz. 239, 242, ¶ 14 (2012). In *Ferrero*, the defendant was charged with sexual conduct with a minor based on events that occurred at the defendant's home. The superior court admitted evidence at trial that, while driving the victim to his home, the defendant forced him to pull down his pants and expose himself. 229 Ariz. at 245, ¶ 25. The Arizona Supreme Court held that evidence that the defendant forced the victim to expose himself was not intrinsic to the sexual conduct that occurred later that day, noting that "forcing the victim to expose himself does not directly prove [the defendant] later committed the charged sexual offense." *Id.* at ¶ 27.

¶37 Here, the State does not argue that evidence of Borquez's post-May 2017 conduct was intrinsic to the charged offenses, and so it has waived that argument. *See, e.g., State v. Carver*, 160 Ariz. 167, 175 (1989). In any event, we see no basis on which to conclude that such evidence was intrinsic to the charged offenses. Just as the defendant's actions in *Ferrero* in forcing the victim to expose himself was not intrinsic to the sexual conduct that occurred later that day, evidence that Borquez engaged in sexual conduct with Beth after May 2017 does not directly prove that he committed the charged offenses in May 2017.

¶38 Because it cannot be considered intrinsic to the charged offenses, evidence of Borquez's post-May 2017 conduct must be considered "other acts" evidence under Rule 404. Because the admission of evidence of

---

[2] Borquez also identifies, as improperly admitted "other acts" evidence, testimony that he used methamphetamine and that he struck Beth on two occasions. As the State correctly argues, this testimony was elicited by defense counsel, and so entitles Borquez to no relief on appeal. *See Escalante*, 245 Ariz. at 145, ¶ 38 ("[I]f defense counsel invited trial error, strategically or carelessly, the defendant cannot obtain appellate relief even if the error was fundamental and prejudicial.").

uncharged wrongful conduct "can easily tip the balance against the defendant," *State v. Machado*, 226 Ariz. 281, 284, ¶ 15 (2011) (cleaned up), evidence of "prior bad acts" is "usually inadmissible at trial," *State v. Terrazas*, 189 Ariz. 580, 582 (1997). Rule 404(b), however, authorizes the admission of "evidence of other crimes, wrongs, or acts" for such purposes "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(1)-(2). If the State intends to offer evidence of other acts under Rule 404(b), it must "articulate," in its pretrial disclosure, the "permitted purpose" for which the evidence is being offered and "the reasoning that supports the purpose." Ariz. R. Evid. 404(b)(3)(B). Before admitting evidence under Rule 404(b), the court "must find that there is clear and convincing proof both as to the commission of the other bad act and that the defendant committed the act." *State v. Anthony*, 218 Ariz. 439, 444, ¶ 33 (2008) (citation omitted).

¶39 Similarly, Rule 404(c) authorizes the admission, in a prosecution for a sexual offense, of evidence "of other crimes, wrongs, or acts" by the defendant "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Like Rule 404(b), Rule 404(c) requires the State to disclose its intent to use such evidence before trial. Before admitting evidence under Rule 404(c), the "trial judge must make three determinations." *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004). "First, the trial court must determine that clear and convincing evidence supports a finding that the defendant committed the other act." *Id.* "Second, the court must find that the commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense." *Id.*; *see also* Ariz. R. Evid. 404(c)(1)(B). "Third, the court must find that the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors mentioned in Rule 403." *Aguilar*, 209 Ariz. at 49, ¶ 30; *see also* Ariz. R. Evid. 404(c)(1)(C). Rule 404(c) "requires the trial judge to make specific findings with respect to each of [these] prerequisites for admission." *Aguilar*, 209 Ariz. at 49, ¶ 30 (emphasis omitted).

¶40 Here, the State did not disclose its intent to offer any specific evidence under Rule 404(b) or Rule 404(c). Instead of identifying any specific "other act" evidence, the State's pretrial disclosures simply referred generally to all of the police reports and other evidence that had been disclosed and indicated the State would offer evidence of unspecified "prior acts" by the defendant "to prove motive, intent, or knowledge or otherwise use at trial." And the superior court did not make any of the

findings required to admit such evidence under either Rule 404(b) or Rule 404(c). The evidence was not, therefore, properly admitted under either Rule 404(b) or Rule 404(c). *See State v. Vigil*, 195 Ariz. 189, 192, 193, ¶¶ 16, 27 (App. 1999) (reversing defendant's conviction due to erroneous admission of evidence under Rule 404(b) and noting that the trial court "did not apply the clear and convincing" standard or "conduct any Rule 403 inquiry" when admitting the "other act" evidence); *see also State v. Prion*, 203 Ariz. 157, 164, ¶ 43 (2002) ("[A]berrant sexual propensity evidence under Evidence Rule 404(c) . . . cannot be admitted . . . without specific findings."). We turn, then, to whether the error in admitting "other act" evidence was fundamental.

**¶41** "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 142, ¶ 21 (emphasis omitted). "An error generally goes to the foundation of a case" if, *inter alia*, it "directly impacts a key factual dispute." *Id.* at 141, ¶ 18. Here, the State argued to the jury that the DNA evidence showing that Borquez impregnated Beth in October 2017 proved that he committed the charged offenses in May 2017. Because Beth's pregnancy was the key fact cited by the State to establish his guilt of the charged crimes, the admission of this evidence "directly impacted a key factual dispute," and so went to the foundation of the case.

**¶42** The erroneous admission of evidence going to the foundation of the case is not reversible absent a showing of prejudice. *Id.* at 142, ¶ 21. "Establishing prejudice from fundamental error varies depending on the nature of the error and the unique case facts." *Id.* at 144, ¶ 29. "The standard is an objective one, and requires a showing that without the error, a reasonable jury *could have* plausibly and intelligently returned a different verdict." *Id.* at ¶ 31 (emphasis added). "In applying the 'could have' standard," the court "examine[s] the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.* Among other things, "the amount of error-free evidence supporting a guilty verdict is pertinent to that inquiry." *Fierro*, 254 Ariz. at 42, ¶ 21 (citation omitted).

**¶43** The State argues that the admission of the challenged evidence without adherence to Rule 404's procedural requirements was not "prejudicial error" because the challenged evidence "would have been admissible" anyway "under either Rule 404(b) or Rule 404(c)." According to the State, "evidence that Borquez repeatedly sexually assaulted Beth over the course of several months" and ultimately impregnated her was

admissible under Rule 404(b) "to show Borquez's opportunity to commit the offenses and to corroborate his identity." Additionally, the State contends, the additional acts of sexual misconduct "occurred within several months of the charged acts, which also made them relevant." Finally, the State asserts, "given that Beth had initially provided a different name for the baby's father, evidence that Borquez repeatedly assaulted her was relevant to help the jury evaluate the credibility of her identification of Borquez as her assailant."

**¶44** We are not persuaded by any of the State's theories of admissibility under Rule 404(b). Rule 404(b) does not authorize the admission of uncharged crimes to prove identity when the defendant's identity is not in dispute, such as when, as here, the victim recognizes the defendant as the perpetrator based on their prior acquaintance. *See Vigil*, 195 Ariz. at 192, ¶ 19 (holding that trial court erred in admitting, at trial for drive-by shooting, evidence that the defendant previously threw rocks and other objects at victim and victim's relatives; such evidence was not admissible under Rule 404(b) to prove defendant's identity because his "[i]dentity was not an issue" since victim "had known the defendant for years."). Likewise, because Borquez and Beth lived in the same apartment in May 2017, his opportunity to commit the charged crimes was not at issue. *See State v. Morris*, 985 N.E.2d 274, 285–86, ¶ 29 (Ohio App. 2012) (holding that evidence of defendant's sexual advances toward victim's sister were not admissible to prove defendant's opportunity to sexually assault victim; "There could be no doubt that [defendant] had ample opportunity to rape [victim]" since they "lived in the same house").

**¶45** Contrary to the State's argument, the fact that Borquez's subsequent acts of sexual abuse occurred close in time to the charged offenses does not, by itself, make evidence of the subsequent acts either relevant or admissible under Rule 404(b). *Vigil*, 195 Ariz. at 194 (reversing defendant's conviction for committing drive-by shooting due to improper admission of "other act" evidence, including evidence that the defendant harassed the victim one week before the shooting).

**¶46** We find illogical the State's argument that, "given that Beth had initially provided a different name for the baby's father," the "evidence that Borquez repeatedly assaulted her was relevant to help the jury evaluate the credibility of her identification of Borquez as her assailant." According to the testimony of Beth and Teresa, Beth made inconsistent statements in November 2017 about the identity of her child's father, first naming Carl before identifying Borquez. DNA evidence proved that Beth's first statement was false while her second statement was true. How could

evidence that Beth made two inconsistent statements, one true and one false, bolster the credibility of her testimony about Borquez's actions in May 2017?

¶47        At bottom, the State's position that evidence of Borquez's post-May 2017 conduct supports Beth's testimony that Borquez assaulted her in May 2017 is a propensity argument—*i.e.*, the fact that DNA testing establishes that Borquez impregnated Beth in October 2017 proves that he also committed sexual offenses against her in May 2017. And that was the State's position at trial; the State argued in closing that Borquez's conduct in impregnating Beth in October 2017 was "proof" that he "was doing this to her while they were in Arizona." Rule 404(b) expressly prohibits the use of evidence of a defendant's uncharged acts to prove his propensity to commit the charged crime. *See Ferrero*, 229 Ariz. at 241, ¶ 5 ("[Rule] 404(b) prohibits evidence of other crimes, wrongs, or acts to prove the defendant's character to act in a certain way.") (emphasis omitted). Indeed, "protect[ing] criminal defendants from unfair use of propensity evidence" is the "central purpose" of Rule 404(b). *Machado*, 226 Ariz. at 283, ¶ 14. We therefore reject the State's argument that Borquez was not prejudiced by the admission of evidence of his post-May 2017 conduct because it purportedly would have been admissible under Rule 404(b) anyway.

¶48        While Rule 404(c) authorizes the admission, under appropriate circumstances, of evidence of a defendant's aberrant sexual propensity, we reject the State's argument that Rule 404(c) can be retroactively invoked to affirm the admission of sexual propensity evidence when none of Rule 404(c)'s procedural safeguards were followed before trial. Rule 404(c)'s procedural safeguards are no mere "empty formality," but "a meaningful exercise" "designed to reduce the extreme risk of undue prejudice a defendant faces when evidence of an aberrant sexual trait is offered." *State v. James*, 242 Ariz. 126, 131, ¶¶ 15–16 (App. 2017). The risk of prejudice from the erroneous admission of "evidence of other [instances of] sexual conduct" is "particularly great" because such evidence "often involve[s] sexual behavior" that is not only illegal but "socially abhorrent," and "thus is more likely to lead the trier of fact to punish the defendant because, in sexual matters, he is a bad man." *Aguilar*, 209 Ariz. at 49, ¶ 31 (citation omitted). Here, the superior court failed to make the determinations required to admit evidence under Rule 404(c), and we cannot undertake that analysis in the first instance on appeal. *See Ferrero*, 229 Ariz. at 245, ¶ 29 (reversing defendant's conviction due to improper admission of evidence of uncharged act and holding that when the State offers evidence of the defendant's aberrant sexual propensity, "the trial court must screen it under Rule 404(c)."). We express no opinion on

whether the evidence of Borquez's post-May 2017 sexual misconduct could have properly been admitted had Rule 404(c)'s procedural requirements been followed. Instead, we hold simply that Rule 404(c) cannot be cited for the first time on appeal as a *post hoc* justification for the admission of sexual propensity evidence when the rule's procedural requirements were never followed.

¶49　　　　While the prejudice from the improper admission of "other acts" evidence may be cured (or at least mitigated) by appropriate jury instructions, the jury instruction that the court gave here did nothing to ameliorate the prejudice caused by the admission of evidence of Borquez's post-May 2017 sexual misconduct. An "other acts" instruction must make clear to the jurors the limited purpose for which they may properly consider the evidence. *See State v. Fish*, 222 Ariz. 109, 123, ¶ 43 (App. 2009) (if evidence is admitted for a proper purpose under Rule 404(b), "the court should instruct the jury on the limited purpose for which it is being admitted"); Ariz. R. Evid. 404(c)(2) (when evidence is admitted under Rule 404(c), "the court shall instruct the jury as to the proper use of such evidence."). "[A]t a minimum, the court should instruct the jury that the admission of other acts does not lessen the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt, and that the jury may not convict the defendant simply because it finds that he committed the other act or had a character trait that predisposed him to commit the crime charged." *Aguilar*, 209 Ariz. at 49, ¶ 30 n.11 (quoting Ariz. R. Evid. 404(c) cmt.). Here, the instruction given to the jury stated merely that "[e]vidence of other acts has been presented" and that "[t]he only acts for your determination are the acts charged in Count 1 and Count 2." The instruction told the jurors nothing about why evidence of Borquez's post-May 2017 sexual conduct was admitted or for what purpose they could consider it.

¶50　　　　The State concedes that the instruction "failed to explain how the jury should consider the evidence" of Borquez's post-May 2017 conduct. The State nonetheless argues that the inadequacy of the instruction worked "to Borquez's favor" because, it contends, the instruction "essentially told the jury not to consider the [other acts] evidence at all."

¶51　　　　We see no reason to conclude that the jurors would have interpreted the instruction as a directive to disregard evidence of Borquez's post-May 2017 conduct, particularly since the State relied so heavily on the challenged evidence in its closing argument. "[A] prosecutor's closing argument may . . . compound the prejudice of an erroneous instruction." *State v. Sulu-Kerr*, 256 Ariz. 530, 539, ¶ 32 (App. 2024) (cleaned up). Here, the prosecutor's argument that the jury should find that Borquez

committed the charged offenses in May 2017 because he committed similar acts after May 2017 only compounded the problem created by a jury instruction that gave the jury no meaningful guidance in evaluating the challenged evidence.

**¶52**     The only evidence the State presented to directly prove that Borquez sexually assaulted Beth in May 2017 consisted of Beth's testimony describing the two incidents in the Chino Valley apartment. Although the jury might well have found Borquez guilty based on Beth's testimony alone, we cannot find, as a matter of law, that no reasonable jury could have reached a different conclusion. Because the jurors were not properly instructed about the purpose for which they should consider evidence of Borquez's post-May 2017 sexual conduct, and because the State focused on DNA evidence proving that Borquez impregnated Beth in October 2017 to support its allegations about the sexual misconduct Borquez allegedly committed in May 2017, a reasonable jury could plausibly have returned a different verdict but for the improper admission of evidence of Borquez's post-May 2017 conduct. *Escalante*, 245 Ariz. at 144, ¶ 31. Accordingly, Borquez has shown prejudice resulting from the fundamental error. We therefore vacate Borquez's convictions and sentences, and remand for a new trial.

**¶53**     Based on our ruling, we do not address Borquez's other arguments in support of his challenge to his convictions.

## CONCLUSION

**¶54**     For the foregoing reasons, we vacate Borquez's convictions and sentences and remand for further proceedings.

