897 P.2d 621

**STATE of Arizona, Appellee,**

v.

**Ray Milton KRONE, Appellant.**

**No. CR–92–0480–AP.**

Supreme Court of Arizona,
En Banc.

June 22, 1995.

Grant Woods, Atty. Gen. By Paul J. McMurdie, Chief Counsel, Crim. Appeals Div. and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for State.

John M. Antieau, Phoenix, for Ray Milton Krone.

## OPINION

MARTONE, Justice.

Ray Milton Krone was found guilty of first degree murder and kidnapping. He was sentenced to death for the murder and a consecutive twenty-one year term of imprisonment for the kidnapping. Appeal to this court is automatic under Rules 26.15 and 31.2(b), Ariz.R.Crim.P., and direct under A.R.S. § 13–4031. We reverse the convictions and remand for a new trial.

### I. BACKGROUND

At about 8:10 a.m. on December 29, 1991, the owner of the C.B.S. Lounge in Phoenix went to his bar to meet a repairman. Although the bar normally would have been closed and locked, he found the front door unlocked and the lights still on. After checking around, he discovered Kim Ancona, a bartender, lying nude in the men's bathroom. She had been fatally stabbed.

The killer left very little behind. There were no fingerprints. There was no semen. All of the blood at the scene matched Anco-

na's. Saliva on Ancona came from a person with the most common blood type. Hair found on Ancona's body was consistent with Ancona's and Krone's. There were no DNA tests.

There was one crucial piece of evidence. Ancona had been bitten on the neck and left breast with sufficient force to leave teeth marks. The police hoped to match these marks with the killer's teeth.

Krone was an immediate suspect because the police had information that he was going to help Ancona close the bar on the night of the murder and his name was in Ancona's address book. He was questioned the day her body was found. He also gave a styrofoam impression of his teeth, which appeared to match the bite marks on Ancona.

On December 30th, the police took blood, hair, saliva, and teeth casts from Krone. A comparison of the casts to Ancona's wounds suggested that Krone had made the marks. He was arrested on December 31st.

The bite marks were crucial to the State's case because there was very little other evidence to suggest Krone's guilt. But there was some. Although Krone had been seen socializing with Ancona in the past, he was evasive with the police about his relationship with her. A witness testified that Ancona told her, hours before the murder, that Ancona did not need help closing the bar because "Ray" was going to help her close. Material from a shuffleboard table at the bar was found in Krone's car, but it was undisputed that Krone had for some time been a customer of the bar. Other physical evidence could neither exclude nor include Krone. Without the bite marks, the State arguably had no case.

Trial was set for April 2, 1992. Continuances delayed it to Monday, July 27, 1992. On Friday, July 24th, the prosecution delivered a videotape labeled "Bite Mark Evidence Ray Krone" to defense counsel, who watched it on Sunday, July 26th, the day before trial. The tape attempted to show a match between Krone's teeth and Ancona's wounds by overlaying the two. It took the dental casts, styrofoam impressions, and CAT scans of the casts and overlaid them on the actual wounds. The tape presented evidence in ways that would have been impossible using static exhibits. Dr. Raymond Rawson, the State's dental expert who produced the tape, used it extensively during his testimony. Although defense counsel had interviewed Dr. Rawson, counsel knew nothing of the tape until the last business day before trial.

Krone moved to preclude the videotape on Monday, July 27th. In the alternative, he asked for a continuance to prepare a tape of his own. The State claimed that it did not receive the tape until Friday, July 24th, and that it only knew about its existence a week before that. The court denied the motion to continue and took the motion to preclude under advisement. A jury was selected on Tuesday, July 28th, and the first witness was called the next day.

Krone raised the motion to preclude again on Monday, August 3rd, the day Dr. Rawson was to testify. After oral argument, the court denied the motion and allowed Dr. Rawson to use the tape during his testimony. The court left open the possibility that the defense could call a dental expert other than the one appointed by the court. Before learning of the tape, the defense had decided not to call the court-appointed expert, Dr. Etkin, who had no experience in video production and was leaving town. Dr. Rawson testified on Tuesday, August 4th. Although he showed the jury some static exhibits, the tape was the centerpiece of his testimony.

On Thursday, August 6th, just before resting, Krone again raised the issue of the videotape. He argued that either he should be granted a one-month recess to allow a defense expert to prepare a defense tape or that an expert should be allowed to testify about another case upon which Dr. Rawson had worked. Krone claimed that Dr. Rawson's work had been successfully challenged in that case. Both motions were denied, and the defense rested.

Although the jury convicted Krone of first degree murder and kidnapping, it acquitted him of sexual assault. Dual verdict forms on the murder count were not used, so we do not know whether it convicted Krone of pre-

meditated murder, felony murder, or both.[1] The court returned a special verdict finding one aggravating factor (murder committed in an especially "heinous or depraved" manner) and two mitigating factors (no prior convictions and an honorable discharge from the United States Air Force). The court found that the mitigators were not sufficiently substantial to call for leniency, and thus imposed a sentence of death.

## II. ISSUES

Although Krone raises several trial and sentencing issues, the resolution of one of them disposes of this appeal. We also address one other issue.[2]

The case dispositive issue is this: Was Krone denied a fair trial where the critical exhibit against him was not disclosed until the eve of trial in violation of Rules 15.1(a)(3) and (4), Ariz.R.Crim.P.?

The other issue is: Should the trial court have given the jury a lesser included homicide instruction?

## III. ANALYSIS

### A. *Admission of the Videotape*

Rule 15.1(a)(3), Ariz.R.Crim.P., requires the State to make available to the defendant, within ten days of arraignment, "[t]he names and addresses of experts who have personally examined ... any evidence ... together with the results of ... comparisons." Rule 15.1(a)(4), Ariz.R.Crim.P., requires the State to similarly disclose a "list of all papers, documents, photographs or tangible objects which the prosecutor will use at trial." The State conceded at oral argument that the "eve-of-trial" disclosure of the videotape violated Rule 15.1.[3] The question is whether

the trial judge should have granted a continuance to allow Krone to meet the tardily disclosed evidence, or should have precluded it.

The State offers three reasons why the discovery violation, absent a continuance or preclusion, should not result in a new trial. First, the State argues that there is no proof of prejudice. Second, the State argues that any error is harmless. Another State dental expert, Dr. John Piakis, also said that Krone made the bite marks. His visual aids were properly disclosed. Dr. Rawson himself said that Krone made the bite marks, and that opinion was not dependent on the tape. Third, Krone could have investigated ways to counteract the tape after the trial started and before the tape was used. Krone's court-appointed expert had a chance to look at the tape. Defense counsel viewed it and cross-examined Dr. Rawson on it. Most of the information contained in the tape had been properly given to the defense.

We discuss prejudicial and harmless error first, and then the court's sanction.

### 1. *Prejudicial and Harmless Error*

Prejudicial error and harmless error rely upon the same legal test. *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980). For error to be harmless, and therefore not prejudicial, we must be able to say "beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993), *cert. denied*, — U.S. —, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

The State argues that Krone had a chance to fully examine the videotape in the week between its disclosure and the date Dr.

---

1. When a case is submitted to a jury on theories of premeditated and felony murder, it is helpful "to give alternate forms of verdict so the jury may clearly indicate whether neither, one, or both theories apply." *State v. Smith*, 160 Ariz. 507, 513, 774 P.2d 811, 817 (1989). This will eliminate some of the issues now before us should the case come back.

2. The resolution of this case makes it unnecessary for us to address the admissibility of Ancona's statement that Ray was going to help her close the bar.

3. The State said that it took the videotape to the defense as soon as it was available, but this does not excuse the rule violation here. Dr. Rawson was the State's witness. The State was responsible for obtaining exhibits that its expert would use. The prosecutor's duty to obtain information extends to "persons who have participated in the investigation *or evaluation* of the case and who are under the prosecution's control." Rule 15.1(d), Ariz.R.Crim.P. (emphasis added).

Rawson was to testify. But trial was underway. A crucial exhibit, disclosed on the eve of trial, needed to be examined. Defense counsel had decided, before receiving the tape, not to call its court-appointed dental expert. The propriety of this tactical decision is not before us.[4] Whatever the wisdom of the original decision, it was reasonable for counsel to reconsider when confronted with the tape, and he needed time to do so.[5] In light of the singular importance of the bite mark evidence to the State's case, the defense should not have been required to meet the force of the crucial, tardily disclosed exhibit and at the same time try a capital case.

The State conceded at oral argument that less than all of the information compiled on the tape had been properly disclosed. But even if it had been, the tape itself should have been timely disclosed. The whole is often substantially greater than the sum of the parts. Video is more powerful and effective than static exhibits. The State's willingness to use the tape instead of the static exhibits, even in violation of Rule 15.1 and over a defense objection in a capital case, is proof enough of its comparative power.

The bite marks on the victim were critical to the State's case. Without them, there likely would have been no jury submissible case against Krone. See Rule 20(a), Ariz. R.Crim.P. We cannot say that the centerpiece of the star witness's testimony, disclosed on the eve of trial, did not "contribute to or affect" the verdict, where it related to the critical evidence the State relied on to link the crime to Krone. Because Krone was prejudiced, the error could not be harmless. See *Fahy v. Connecticut*, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

### 2. *The Sanction*

■ It follows, therefore, that the trial court should have either granted a continuance or precluded the tape when first asked to do so. We acknowledge that the propriety of a given sanction for a discovery violation is largely within the discretion of the trial judge. See *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387, *cert. denied*, —— U.S. ——, 114 S.Ct. 268, 126 L.Ed.2d 219 (1993); *see also* Rule 15.7(a), Ariz.R.Crim.P. We acknowledge, too, that some discovery violations can be easily solved, say, by allowing a witness to be interviewed during trial. Procedural rules and our cases suggest that improperly disclosed evidence is more often admitted in criminal cases than in civil cases, although given the comparative importance of life and liberty interests over property interests, one would think it would be the other way around. *Compare* Rule 15.7(a), Ariz.R.Crim.P. (court *may* "impose any sanction which it finds just") *and State v. Smith*, 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979) (requiring inquiry to decide whether sanctions short of witness preclusion can be used in criminal cases) *with* Rule 26.1(c) Ariz. R.Civ.P. (court *shall* exclude evidence not timely disclosed, unless "good cause" shown) *and DeElena v. Southern Pac. Co.*, 121 Ariz. 563, 568, 592 P.2d 759, 764 (1979) (giving judge wide discretion in deciding sanctions for discovery violations in civil cases).

But the common thread in all of this is that a discovery sanction should be proportionate to the harm caused. And the sanction should cure that harm to the maximum practicable extent. Here, Krone requested relief at the earliest possible moment. He asked for a continuance or preclusion of the videotape. The jury had not yet been selected. The State had just disclosed a tape that its star witness would rely upon almost exclusively. A continuance would either have caused a problem or it would not. If not, then it would have given the defense an opportunity to meet the force of the new exhibit. If a delay would have caused hardship, then the tape should have been precluded. The State could have used the static exhibits, which it claims were not unlike the tape. Under these facts, the sanctions that would have

---

4. Krone filed a notice of post-conviction relief and we recently allowed it to proceed. *Krone v. Hotham*, 181 Ariz. 364, 890 P.2d 1149 (1995).

5. Indeed, in support of his motion for new trial, Krone provided the affidavit of Dr. Homer Campbell, who said that he could have testified on Friday, August 7, about Dr. Rawson's other case and, if given sufficient time, could have produced a tape to possibly challenge Dr. Rawson's tape.

cured the harm were precisely those the defendant suggested. The action taken—to tell the defendant to examine the tape between the start of trial and the day it was shown—was not adequate.

B. *Lesser Included Homicide Instruction*

 Krone argues that the trial court should have instructed the jury on lesser included offenses to first degree murder. Trial counsel did not request such an instruction. But depending on the evidence, a lesser included homicide instruction may be appropriate on retrial. It is fundamental error to omit such an instruction in a capital case when it is supported by the evidence.[6] See *State v. Vickers*, 129 Ariz. 506, 513, 633 P.2d 315, 322 (1981), which relied upon *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).[7] If the evidence does not support a lesser homicide instruction, then it should not be given. "To determine whether there is sufficient evidence to require the giving of a lesser included offense instruction, the test is 'whether the jury could rationally fail to find the distinguishing element of the greater offense.'" *State v. Detrich*, 178 Ariz. 380, 383, 873 P.2d 1302, 1305, (1994) (quoting *State v. Noriega*, 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984)). That distinguishing element, at least as between second degree and premeditated first degree murder, is premeditation. If a jury could rationally conclude that premeditation was lacking, a second degree murder instruction would be needed.

But even when otherwise warranted by the evidence, *Beck* does not always require a lesser included instruction. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). The defendant may not want one.

Although the *Beck* rule rests on the premise that a lesser included offense instruction in a capital case is of benefit to the defendant, there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will want to take his chances with the jury. If so, we see little reason to require him ... to give the State what he perceives as an advantage—an opportunity to convict him of a lesser offense if it fails to persuade the jury that he is guilty of capital murder.

*Id.* at 456–57, 104 S.Ct. at 3160. A defendant should not have a lesser included instruction forced upon him.

On retrial, if a premeditated first degree murder charge goes to the jury, and if the *Detrich* test is met, then the trial court should offer to give the appropriate lesser included instruction. If Krone agrees, the court should give the instruction. If he objects, then the instruction should not be given.

## IV. CONCLUSION

The State's discovery violation related to critical evidence in the case against the accused. We cannot say it did not affect the verdict. We reverse the convictions and remand for a new trial, where Krone will have an opportunity to meet the force of the videotape.

MOELLER, V.C.J., CORCORAN and ZLAKET, JJ., concur.

FELDMAN, Chief Justice, specially concurring.

I concur in the analysis and result but write separately because I believe that, for purposes of retrial, it is important to sound a note of caution concerning admission of the hearsay from Kate Koester, another bar employee.

The trial judge overruled Defendant's objections to Koester's testimony that the vic-

---

**6.** In a pure felony murder case, no lesser included instruction is necessary because felony murder includes no lesser offense. *State v. LaGrand*, 153 Ariz. 21, 30, 734 P.2d 563, 572, *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

**7.** The State submits that *Vickers* and *State v. Dumaine*, 162 Ariz. 392, 403, 783 P.2d 1184,

1195 (1989) are incorrect interpretations of *Beck* and implies that we should overrule those cases. We decline the invitation but note that a lesser included instruction need not always be given when supported by the evidence. *See infra* at 182 Ariz. at 323, 897 P.2d at 625.

**324**

tim said she did not need help closing the bar because "she would be fine, ... Ray was gonna close with her.... That he was gonna close with her. He was gonna come down that night." The state offered this evidence, I presume, as tending to prove the victim's state of mind—that she intended to stay at the bar until closing. It was admissible for that purpose under the state of mind exception to the hearsay rule. Ariz.R.Evid. 803(3).

The evidence, however, not only tended to prove that the victim intended to stay at the bar but also could be used as evidence to show the conduct of "Ray," presumably referring to Defendant. When used to prove Ray's intent or conduct, however, the evidence is not a statement of the declarant's state of mind but merely the declarant's statement of her expectation of Ray's future conduct. Further, the statement lacked any foundation about the basis for that expectation. Did the victim expect Ray because of something he said, something someone else said, some speculation on her part, or because Ray looked furtively at her the night before? We do not know and she did not say.

Standing alone, the statement more closely resembles a declaration of the victim's belief admitted to prove the fact believed—that someone named "Ray" was "gonna come down that night"—a use that Rule 803(3) specifically prohibits.[1] Thus, use of the co-worker's testimony to prove Ray's conduct is questionable under the hearsay rule. *Compare State v. Adamson*, 136 Ariz. 250, 257, 665 P.2d 972, 979 (summarily approving admission of similar statements), *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983) *with State v. Via*, 146 Ariz. 108, 121, 704 P.2d 238, 251 (1985) (approving admission of hearsay when "primary purpose" was "to show that [the] *declarant* acted in accordance with his stated intention to be at a certain place at a certain time"), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986). *See* JOHN W. STRONG ET AL., 2 MCCORMICK ON EVIDENCE § 275, at 236–37 (4th ed. 1992) (noting that the "danger of

unreliability" with such statements has "prompted some courts to impose additional limitations, restrictions, or requirements"); *see also State v. Engweiler*, 118 Or.App. 132, 846 P.2d 1163, 1164–65 (1993) (holding that "statements by a declarant are admissible under 803(3) only to prove the declarant's future conduct, not the future conduct of another"); *State v. Wetzel*, 868 P.2d 64, 69 (Utah 1993) (stating that "limiting instructions are a per se requirement"); *United States v. Cicale*, 691 F.2d 95, 104 (2d. Cir. 1982) (approving admission because other evidence showed defendant's involvement and because "the statements [were] supported by a ring of reliability").

We cannot make any final decision on the admissibility of the statement at retrial. For instance, we do not know whether the statement will be needed and really be offered for its undoubtedly permissible use—to prove the declarant's state of mind—or for its potentially impermissible use—to prove her expectation of Ray's conduct. We raise the question and leave it to the trial judge to decide on the complete record available at retrial.

---

1. Under Rule 803, "[t]he following are not excluded by the hearsay rule ...: A statement of the declarant's then existing state of mind ... but not including a statement of memory or belief to prove the fact remembered or believed...." Ariz.R.Evid. 803(3).