NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KATHY ANN SCHAEFFER, *Appellant.*

No. 1 CA-CR 23-0400
FILED 03-11-2025

Appeal from the Superior Court in Mohave County
No. S08015CR202201408
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Mayes Telles PLLC, Phoenix
By Candy Marrufo
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

**W I L L I A M S**, Judge:

¶1 Kathy Schaeffer appeals her convictions and sentences for multiple drug offenses. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 In February 2021, a police detective met with the subject of a drug investigation and offered to forgo filing charges against her if she served as a confidential informant and "provide[d] evidence . . . to indict FIVE suspects for felony drug sales" within 120 days. The subject ("the confidential informant") entered a written agreement with the police and arranged three "controlled buys" from Schaeffer before July 2021.

¶3 The State then charged Schaeffer with one count of sale of narcotic drugs (Count 1), one count of sale of dangerous drugs (Count 2), and one count of offer to sell or transfer dangerous drugs (Count 3). The State also alleged an aggravating factor, and that Schaeffer had a prior felony conviction.

¶4 After a three-day trial, a jury convicted Schaeffer as charged. The jurors also found the alleged aggravating factor—that Schaeffer committed the offenses for pecuniary gain—as to Counts 1 and 2.

¶5 The trial court found that Schaeffer had one prior felony conviction and sentenced her to a presumptive term of five years' imprisonment on Count 1, a consecutive, presumptive term of ten years' imprisonment on Count 2, and a consecutive, mitigated term of eight years' imprisonment on Count 3. Schaeffer timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

I. **Sufficiency of the Evidence**

**¶6**        Arguing insufficient evidence supports her convictions, Schaeffer contends the trial court erroneously denied her motion for judgment of acquittal.

**¶7**        After the State rested, Schaeffer moved for judgment of acquittal under Arizona Rules of Criminal Procedure ("Rule") 20, pointing primarily to the "questionable value" of certain recordings the State submitted into evidence. Despite agreeing that the recordings had limited evidentiary value—confirming only that the confidential informant and Schaeffer had "met up" on three occasions and money had exchanged hands—the trial court denied the motion, finding the State had proven each count beyond a reasonable doubt through testimonial evidence.

**¶8**        We review *de novo* a trial court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (internal quotation marks omitted). In reviewing the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and neither reweigh conflicting evidence nor assess the credibility of witnesses, *see State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial, *West*, 226 Ariz. at 562, ¶ 16, and a judgment of acquittal is appropriate only "if there is no substantial evidence to support a conviction," Ariz. R. Crim. P. 20(a).

**¶9**        As charged in this case, a person commits: (1) the sale of a narcotic drug by knowingly selling, transferring, or offering to sell or transfer a narcotic drug, A.R.S. § 13-3408(A)(7); (2) the sale of a dangerous drug by knowingly selling, transferring, or offering to sell or transfer a dangerous drug, A.R.S. § 13-3407(A)(7); and (3) an offer to sell or transfer a dangerous drug by knowingly offering to sell or transfer a dangerous drug, A.R.S. § 13-3407(A)(7). As categorized by statute, cocaine is a narcotic drug, A.R.S. § 13-3401(5), (20)(bb), and methamphetamine is a dangerous drug, A.R.S. § 13-3401(6)(c)(xxxviii).

**¶10**        At trial, the State presented evidence that: (1) the confidential informant met Schaeffer at a bar on May 17, 2021, and paid her $200 for 3 grams of cocaine; (2) the confidential informant met Schaeffer at a discount retail store on May 25, 2021, and paid her $200 for 6.87 grams of methamphetamine; (3) the confidential informant met Schaeffer at a

grocery store parking lot on June 16, 2021, and received from her 5.74 grams of methamphetamine without paying her the $100 provided by the police because Schaeffer acknowledged "shorting" the confidential informant on the previous buy; (4) before the confidential informant arrived at the designated location for each controlled buy, officers searched her person and vehicle for drugs (finding none), provided her with money (photocopied and recorded), and outfitted her with a "special device" that both recorded her interactions with Schaeffer and provided a "live feed" to the surveilling officers; and (5) after each meeting with Schaeffer, officers debriefed the confidential informant at a predetermined location, retrieved the controlled-buy drugs and recording device from her, and searched her person for any other drugs (finding none).

¶11        At trial, Schaeffer argued that the confidential informant simply succumbed to police pressure and—fearing her own prosecution—manufactured the drug buys to satisfy her obligations under the confidential informant agreement. But the jurors had the opportunity to observe the confidential informant first-hand, assess her credibility, and determine the weight to accord her testimony. We will not second-guess their determinations. *See Buccheri-Bianca*, 233 Ariz. at 334, ¶ 38. Moreover, although the video recordings did not clearly show Schaeffer directly handling drugs, several officers corroborated the confidential informant's testimony concerning the controlled buys, recounting that they searched her for drugs before each buy, found none, watched her meet with Schaeffer in real time, and then debriefed her after the buys, recovering usable quantities of cocaine and methamphetamine, with substance identification and weight later confirmed by a forensic analyst.

¶12        Viewed in its entirety, substantial evidence existed from which a reasonable jury could find that Schaeffer knowingly sold both a narcotic drug and a dangerous drug and knowingly offered to sell or transfer a dangerous drug. Therefore, the trial court did not err by denying Schaeffer's motion for judgment of acquittal.

## II.        Adequacy of the Jury Instructions

¶13        Schaeffer argues the trial court erred by failing to *sua sponte* instruct the jury on the lesser-included offenses of possession of a narcotic drug and possession of a dangerous drug, noting that officers recovered less than nine grams of cocaine or methamphetamine following each controlled buy. *See* A.R.S. § 13-3401(36)(b), (e) (establishing the "threshold amount" of both cocaine and methamphetamine as nine grams); A.R.S. § 13-3407(D) (designating a person convicted of an offense or offenses

involving an aggregate amount of dangerous drugs exceeding nine grams ineligible for "suspension of sentence, probation, pardon or release from confinement"); A.R.S. § 13-3408(D) (designating a person convicted of an offense or offenses involving an aggregate amount of narcotic drugs exceeding nine grams ineligible for "suspension of sentence, probation, pardon or release from confinement").

¶14        Because Schaeffer failed to object to the instructions given and did not request the lesser-included offense instructions, we review her appellate challenge only for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018); *see also* Ariz. R. Crim. P. 21.3(b) ("Any objection to the court's giving or failing to give any instruction . . . must be made before the jury retires to consider its verdict. The objection must be on the record and distinctly state the matter to which the party objects and the grounds for the objection. If a party does not make a proper objection, appellate review may be limited."); *State v. Gallegos*, 178 Ariz. 1, 12 (1994) ("[A] trial judge's failure to give an instruction *sua sponte* provides grounds for reversal only if such failure is fundamental error.").

¶15        In a non-capital case, the trial court is not required to instruct on every lesser-included offense supported by the record. *State v. Gipson*, 229 Ariz. 484, 486, ¶ 13 (2012). Instead, the court has a duty to provide a lesser-included offense instruction only when the absence of such an instruction "would fundamentally violate [the] defendant's right to a fair trial" and interfere with the defendant's "ability to conduct h[er] defense." *State v. Lucas*, 146 Ariz. 597, 604 (1985), *overruled in part on other grounds by State v. Ives*, 187 Ariz. 102, 106–09 (1996). Indeed, trial judges should "exercise restraint in instructing *sua sponte* on lesser included offenses," and, in general, a trial court "should withhold charging on lesser included offense[s] unless one of the parties requests it" because the issue is "best resolved . . . by permitting counsel to decide on tactics." *Gipson*, 229 Ariz. at 487, ¶¶ 15–16 (internal quotation marks omitted); *see also State v. Vanderlinden*, 111 Ariz. 378, 379–80 (1975) (explaining that when a defendant assesses the evidence presented by the State and concludes it is insufficient "to secure a conviction of the greater crime," the decision to forgo jury instructions on lesser-included offenses may not constitute strategic error but a viable strategy to "secure a complete acquittal"); *State v. Krone*, 182 Ariz. 319, 323 (1995) (explaining "there may well be cases in which the defendant will be confident enough that the State has not [proven the greater offense] that [s]he will want to [forgo lesser-included offense instructions and] take h[er] chances with the jury") (internal quotation marks omitted).

¶16 In this case, Schaeffer predicated her entire defense on the theory that the confidential informant fabricated the drug buys. During closing argument, defense counsel argued that: (1) the confidential informant's credibility was the primary issue; (2) the confidential informant was a disreputable drug dealer who faced serious charges unless she quickly provided evidence to the police; (3) the surveilling officers failed to search the confidential informant and vehicle for concealed drugs sufficiently before she met with Schaeffer; and (4) Schaeffer *never possessed drugs* at any time: "[O]ur defense is, and has always been, my client did not have drugs."

¶17 Because Schaeffer's defense strategy was to deny she ever possessed drugs, the trial court's failure to *sua sponte* instruct the jury on possession of narcotic and dangerous drugs did not interfere with her right to present her defense. *See Krone*, 182 Ariz. at 323 ("A defendant should not have a lesser included instruction forced upon h[er]."). Simply put, the lesser-included offense instructions at issue were wholly inconsistent with the defense theory of the case. Therefore, the court did not commit fundamental, prejudicial error.

### III. Length of the Sentence Imposed

### A. Proportionality of the Punishment

¶18 Schaeffer argues that the length of her sentence violates the federal and state constitutional protections against cruel and unusual punishments. We review *de novo* whether a sentence constitutes a cruel and unusual punishment. *State v. Kasic*, 228 Ariz. 228, 231, ¶ 15 (App. 2011).

¶19 To evaluate the constitutionality of a noncapital sentence, we first determine whether "there is a threshold showing of gross disproportionality by comparing the gravity of the offense [and] the harshness of the penalty." *State v. Berger*, 212 Ariz. 473, 476, ¶ 12 (2006) (internal quotation marks and citation omitted). "A prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the State's penological goals and thus reflects a rational legislative judgment, entitled to deference." *Id.* at 477, ¶ 17 (internal quotation marks and citation omitted). Because "noncapital sentences are subject only to a narrow proportionality principle," they violate the constitutional prohibitions on cruel and unusual punishments "only in exceedingly rare cases." *Id.* at 475, 477, ¶¶ 10, 17 (internal quotation marks and citations omitted). But when a comparison of the gravity of the offense and the harshness of the penalty "leads to an

inference of gross disproportionality, the court then tests that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id*. at 476, ¶ 12.

**¶20**　　　"In comparing the gravity of the offense to the harshness of the penalty, courts must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Id*. at 476, ¶ 13. Several principles guide our review, including "the primacy of the legislature in determining sentencing, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that objective factors guide proportionality review." *Id.* The key question is whether the legislature had a reasonable basis for believing that the contested sentencing scheme would advance its legitimate criminal justice goals. *Id*. at 477, ¶ 17. We apply the same analytic framework to review challenges to the length or proportionality of a sentence whether predicated on the Eighth Amendment to the United States Constitution or Article 2, Section 15, of the Arizona Constitution. *See State v. Davis*, 206 Ariz. 377, 380–81, ¶ 12 (2003) (finding no "compelling reason to interpret Arizona's cruel and unusual punishment provision differently from the related provision in the federal constitution").

**¶21**　　　First, Schaeffer challenges the constitutionality of the statutory minimum (5 years), presumptive (10 years), and maximum (15 years) sentences for the sale or transfer of methamphetamine. *See* A.R.S. § 13-3407(E). Equating methamphetamine and cocaine as two types of "powerful illicit stimulant[s]," Schaeffer contends that A.R.S. § 13-3407(E) unconstitutionally imposes greater punishments for the sale or transfer of methamphetamine than A.R.S. §§ 13-3408(B)(7) and -702(D) impose for the "equivalent crime involving cocaine" (minimum 4 years, presumptive 5 years, and maximum 10 years).

**¶22**　　　Together, A.R.S. §§ 13-3407 and -3408 impose standard class 2 felony sentences for the sale of all dangerous and narcotic drugs except methamphetamine (dangerous drug), A.R.S. § 13-3407(E), and fentanyl (narcotic drug), A.R.S. § 13-3408(F), which share the same heightened penalties. As noted by the State, the Arizona legislature has expressly found "that the possession of methamphetamine for sale . . . and the trafficking in methamphetamine pose a serious threat to the safety of the community." 2005 Ariz. Sess. Laws, ch. 327, § 10. Despite this finding, Schaeffer's challenge to the constitutionality of A.R.S. § 13-3407(E) fails to acknowledge the legislature's legitimate goal of minimizing the particularly pernicious effects of methamphetamine—both to the individual user and society at large. In fact, Schaeffer asserts that the enhanced statutory penalty for the

sale of methamphetamine simply demonstrates "the legislature's distaste for one harmful street drug compared to another." To the contrary, the enhanced sentencing scheme reflects "a rational legislative judgment" that enacting harsher penalties would deter the sale and use of methamphetamine and reduce the associated societal harms. *Berger*, 212 Ariz. at 477, ¶ 17 (internal quotation marks and citation omitted).

**¶23** Second, Schaeffer contests the trial court's imposition of consecutive sentences, which she contends amounts to a cruel and unusual punishment. Specifically, Schaeffer argues that the imposition of consecutive sentences, combined with the statutory requirement of "calendar year" sentences for the sale of methamphetamine, *see* A.R.S. §§ 13-3407(E), -105(4) (defining "calendar year" as 365 days' actual time served), exacerbated the already "pronounced disparity" between the punishments for the sale or transfer of methamphetamine and the sale or transfer of cocaine.

**¶24** In comparing the gravity of a crime and the severity of the punishment, we consider only whether "the sentence imposed for each specific crime" is excessive, not the cumulative sentence. *Berger*, 212 Ariz. at 479, ¶ 28. Stated differently, because a defendant does not have a constitutional right to concurrent sentences for separate crimes, we do not "consider the imposition of consecutive sentences in a proportionality inquiry." *Id.* at ¶ 27. "Thus, if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id.* at 479, ¶ 28.

**¶25** Despite these general principles, Schaeffer urges this court to conduct "a more individualized proportionality review," evaluating the constitutionality of her consecutive sentences in light of the specific facts of the case and her particular circumstances. But "in assessing the constitutionality of a sentence," a reviewing court considers the gravity of the offense, and only "if the sentence imposed is so severe that it appears grossly disproportionate to the offense" must the court "examine the facts of the case and the circumstances of the offender." *Davis*, 206 Ariz. at 384, ¶ 34.

**¶26** Because Schaeffer has failed to make a threshold showing of gross disproportionality, we need not compare the statutory sentence for the sale of methamphetamine to any other Arizona statutory sentence or to the statutory sentences for the sale of methamphetamine in any other jurisdictions. Nor do we consider Schaeffer's specific circumstances. The

consecutive sentences imposed by the trial court clearly fall within the statutory limits—and given the legislature's legitimate interest in curtailing the sale and use of methamphetamine—Schaeffer's sentence does not constitute a cruel and unusual punishment. *See State v. Pike*, 133 Ariz. 178, 181 (App. 1982) ("[T]he fixing of sentences for particular offenses is a matter properly left to the legislature, and [] only in the most extreme case is it appropriate for the courts to interfere with the legislative prerogative.").

## B. Statutory Constraints on the Imposition of Consecutive Sentences and the Exercise of Judicial Discretion

¶27 Next, Schaeffer contends the trial court violated A.R.S. § 13-116, which prohibits consecutive sentences for offenses arising out of a single act, by imposing consecutive sentences on Counts 2 and 3. The imposition of an illegal sentence constitutes fundamental error. *State v. Martinez*, 226 Ariz. 221, 224, ¶ 17 (App. 2011).

¶28 To determine whether separately charged offenses constitute a single act for sentencing purposes, we must consider the facts of each crime separately, subtract "from the factual transaction" the evidence necessary to convict on the more serious charge, and determine whether the remaining evidence satisfies the elements of the other offense. *Id.* at 225, ¶ 18 (quoting *State v. Gordon*, 161 Ariz. 308, 315 (1989)). If the remaining evidence satisfies the elements of the other crime, A.R.S. § 13-116 does not bar the imposition of consecutive sentences. *Id.*

¶29 Applying this analytic framework, we remove from consideration the evidence collected on May 25, 2021, which established the elements of the sale of a dangerous drug (methamphetamine), and consider only whether the evidence gathered on June 16, 2021 established the elements of an offer to sell or transfer a dangerous drug (methamphetamine). At trial, the State presented evidence that on June 16, 2021, police searched the confidential informant and gave her $100 and a recording device. The confidential informant then drove to a grocery store parking lot and briefly sat with Shaeffer on a bench. While seated together, Schaeffer handed the confidential informant $100 dollars, acknowledging that she had "shorted" the confidential informant on May 25, 2021. After exchanging the money, the confidential informant and Schaeffer walked to Schaeffer's vehicle. Once inside, Schaeffer used a scale to weigh out methamphetamine and gave the drugs to the confidential informant in exchange for the $100 that she had refunded the confidential informant only moments earlier. The confidential informant did not use the money given to her by the police during the transaction.

¶30        To prove Schaeffer offered to sell or transfer a dangerous drug on June 16, 2021, as a wholly separate act from the sale of a dangerous drug on May 25, 2021, the State needed only to establish that Schaeffer knowingly offered to *transfer* a dangerous drug to the confidential informant on June 16, 2021. In other words, the State did not need to prove that Schaeffer offered to *sell* the confidential informant a dangerous drug. Thus, even if the money involved in the June 16, 2021 transaction was arguably part of the May 25, 2021 transaction, the State met its burden as to each element of Count 3 through separate evidence. Specifically, the State established that the confidential informant did not have drugs on her person immediately before meeting with Schaeffer, that she briefly sat in Schaeffer's car while Schaeffer weighed methamphetamine and handed it to her, and that upon exiting Schaeffer's vehicle, the confidential informant had 5.74 grams of methamphetamine in her possession. Given the distinct evidence establishing the elements of offer to transfer a dangerous drug, the trial court did not violate A.R.S. § 13-116 by imposing consecutive sentences for Counts 2 and 3.

¶31        Lastly, Schaeffer argues the trial court abused its discretion by imposing presumptive (Counts 1 and 2), consecutive sentences. She contends the court improperly: (1) applied a "one-size fits all approach" instead of considering "the specific facts and circumstances" of her case, and (2) dismissed her age as a mitigating factor. To remedy this alleged abuse of discretion, Schaeffer asks this court to exercise its power under A.R.S. § 13-4037(B), which authorizes a court "to reduce the extent or duration of the punishment imposed, if, in its opinion, . . . the punishment imposed is greater than under the circumstances of the case ought to be inflicted." *See State v. DePiano*, 187 Ariz. 27, 30 (1996) (explaining A.R.S. § 13-4037(B) "allows the court to look at the particular circumstances of the crime and the offender and reduce any sentence that it finds to be excessive, even though the sentence is constitutional"), *overruled on other grounds by Davis*, 206 Ariz. at 383-84, ¶¶ 27-34.

¶32        Absent an abuse of discretion, we will not disturb a sentence within the statutory range. *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007). "[A] reviewing court may find [an] abuse of discretion when the sentencing decision is arbitrary or capricious, or when the court fails to conduct an adequate investigation into the facts relevant to sentencing." *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996). Appellate courts exercise power under A.R.S. § 13-4037(B) "with great caution" and "will only reduce a sentence if it clearly appears to be too severe." *DePiano*, 187 Ariz. at 31. "The power of this Court to modify sentences should [] be tempered by the realization that a defendant appears in person before the trial judge,

rendering that judge, in most instances, more able than ourselves to evaluate the defendant and h[er] circumstances." *State v. Patton*, 120 Ariz. 386, 388 (1978).

¶33      In her sentencing memorandum, Schaeffer asked the trial court to find two mitigating circumstances, her age—64 at the time of sentencing—and the support of her family and friends. Pointing to the "relatively" small quantity of drugs involved and the monetary connection between Counts 2 and 3, Schaeffer requested that the court impose concurrent, mitigated sentences.

¶34      Before pronouncing Schaeffer's sentence, the trial court stated that it had "read and considered" the presentencing report, Schaeffer's sentencing memorandum, the letters of support submitted on Schaeffer's behalf, and the trial testimony. Based on the letters and the presence of community members at sentencing, the court found community support as a mitigating circumstance. The court declined, however, "to find age as a mitigating circumstance," stating it may find age as a mitigating circumstance if the defendant is a teenager with no prior experience with the criminal justice system or "maybe 65 or older or maybe in their 70s or 80s, depending on the circumstances." The court further stated that "nothing about [Schaeffer's] age" mitigated her conduct in this case. Accordingly, the court determined that, for Counts 1 and 2, "the aggravating and mitigating circumstances counterbalance[d] each other." Addressing Schaeffer's request for concurrent sentences, the court stated:

> The Court finds that consecutive sentences are appropriate because all three offenses are three separate drug sales that occurred on three separate occasions. And I realize an argument can be made that this is really just one ongoing common scheme or plan. I also recognize I have the authority and the discretion to impose concurrent sentences.
>
> My position is that when a person commits multiple crimes in the community, they should be held accountable for each crime that they commit. For instance, if someone commits a burglary, I don't want to send a message that just take out the whole neighborhood and commit 20 burglaries because you'll just get one sentence for everything. If someone's selling drugs in the community, I don't want them to think, I can just sell drugs at will 20, 30 times—or even 3 times—and expect one sentence if I get caught.

I believe that each time a person sells drugs in the community on separate occasions, that's a separate harm to the community by selling drugs to another person. And who knows where the drugs are going to go? In this case, of course, it was an informant, so it went to law enforcement and then the evidence locker. But when you're selling drugs in the community to people who are using drugs, or maybe selling parts of the drugs they buy, then that is a separate harm to the community. Therefore, the Court finds that consecutive sentences are appropriate.

¶35        Contrary to Schaeffer's contention, the record reflects that the trial court carefully considered the facts of the case and thoughtfully, not mechanically, exercised its discretion. In rejecting Schaeffer's contention that her age qualified as a mitigating circumstance, the court explained that she was neither young and unfamiliar with the criminal justice system nor elderly. While a sentencing court must consider a defendant's age, A.R.S. § 13-701(E)(1), it need not find age as a mitigating factor, *see State v. Nash*, 143 Ariz. 392, 406 (1985) (acknowledging that "advanced age" could be a mitigating factor, but determining, under the facts of the case, that the defendant's age (67) did "not warrant leniency"). Likewise, the court explained that it favored consecutive sentences because each sale of drugs causes "a separate harm" to the community.

¶36        In prescribing a punishment, the sentencing court weighs "both the character of the defendant and the crime charged. It is important that [this] judgment be protected." *Patton*, 120 Ariz. at 390. Here, the record supports the trial court's findings concerning Schaeffer and her offenses. Therefore, we conclude the court "legitimately exercise[d]" its discretion in imposing presumptive (Counts 1 and 2), consecutive sentences. *Id.*

## CONCLUSION

¶37        We affirm the convictions and sentences.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR