NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDGAR CARLOS REYES, *Appellant*.

No. 1 CA-CR 24-0431

FILED 05-08-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-150663-001
The Honorable Harla M. Davidson, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph Newberg
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Laila Ikram, Mikel Steinfeld
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N**, Judge:

¶1          Edgar Carlos Reyes appeals his convictions for two counts of aggravated driving under the influence ("DUI"), asserting the trial court erred by admitting evidence that was not timely disclosed. Because Reyes has not shown the court abused its discretion, we affirm.

## BACKGROUND

¶2          Around 4:30 a.m. on September 16, 2023, a "wrong-way detection alarm went off," alerting a traffic operations specialist that a vehicle had entered the Loop 303 highway ("Loop 303") through an exit ramp and was proceeding against traffic. Through a live camera feed, the specialist identified the vehicle as a white pickup truck, reported the situation to law enforcement, and relayed the truck's movements to the dispatcher. The specialist only lost sight of the truck for a few seconds as he switched between different camera systems and did not observe any other white pickup trucks in that section of Loop 303.

¶3          The truck continued southbound in the northbound lanes, migrated to the right (the northbound "fast lane"), slowed down, and eventually stopped and completed a U-turn. The truck then exited Loop 303 from the same exit ramp where it originally entered, proceeded straight across the intersection, and rejoined the northbound lanes of Loop 303. At 4:32 and 4:34 a.m., police dispatch received 911 calls from two motorists who reported a wrong-way driver. One caller identified the vehicle as "a pickup truck . . . [of] a lighter color, it could have been a dirty white or a gray," driving "south in the northbound lanes of Loop 303, right near exit 115." The other caller reported their location "on the 303 heading north just south of the Bell [Road] exit." The caller encountered "a white large pickup truck going southbound in the northbound . . . highway. . . . And they're right on the edge of the shoulder. . . . [T]he vehicle in front of me and myself had to swerve over so they would not hit us."

¶4        A trooper received the report of a wrong-way driver at 4:32 a.m., located the white truck, observed it swerving and weaving, and performed a traffic stop at 4:35 a.m.  The driver (Reyes) had bloodshot eyes, slurred speech, and an unsteady gait.  He also offered his passport when asked to provide his driver's license.  Two breath samples, taken six minutes apart, showed Reyes' blood alcohol content ("BAC") was 0.148% and 0.149%, well above the legal limit set by A.R.S. § 28-1381.

¶5        The State charged Reyes with two counts of aggravated DUI based on wrong-way driving.  A.R.S. §§ 28-1381(A)(1), -1383(A)(5), (O)(1), (P)(2).  On February 7, 2024, Reyes moved for the preservation and disclosure of the two 911 recordings under Arizona Rule of Criminal Procedure ("Rule") 15.1(e), and the court granted the motion, ordering the State "to make all reasonable efforts" to preserve and disclose the recordings.  The State requested the recordings from the Arizona Department of Public Safety that same month and followed up in March and April.  The State received the recordings on May 5 and disclosed them to Reyes three days later.

¶6        The State then filed a motion in limine to admit the recordings.  In response, Reyes argued the disclosure was untimely and thus there was insufficient "time before trial to try and locate these witnesses. Possible exculpatory evidence is now unavailable."  Reyes asked the court to preclude the recordings for untimeliness.  After discussing the issues with counsel, the trial court granted the State's motion.

¶7        A jury found Reyes guilty on both counts, and the court sentenced him to concurrent terms of four months' imprisonment.  Reyes timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

**DISCUSSION**

¶8        Reyes argues the trial court abused its discretion by admitting the 911 call recordings despite their untimely disclosure.  He notes that his motion to disclose the recordings created a March 7, 2024 deadline; thus, the State's disclosure was more than two months late.  *See* Ariz. R. Crim. P. 15.1(e)(1)(B) (requiring the State to make "any 911 calls existing at the time of the request" available to the defendant no later than 30 days following receipt of a written request).  Trial was scheduled to begin on May 20, 2024, so Reyes contends the late disclosure deprived him of the opportunity to locate and interview the callers.  Because he could not "cross-examine the callers or develop a counter-narrative," he argues that the State violated his

Fourteenth Amendment right to due process. U.S. Const. amend. XIV. Citing this prejudice, he asks for a new trial.

¶9        "Whether to impose a sanction for late disclosure and which sanction to impose are discretionary decisions left to the trial court; we will not disturb those decisions absent an abuse of discretion." *State v. Moody*, 208 Ariz. 424, 454, ¶ 114 (2004); *see also State v. Towery*, 186 Ariz. 168, 186 (1996) ("Denial of a [disclosure] sanction is generally not an abuse of discretion if the trial court believes the defendant will not be prejudiced."). Although preclusion of evidence is an available remedy, it "is rarely an appropriate sanction for a discovery violation." *State v. Naranjo*, 234 Ariz. 233, 242, ¶ 30 (2014).

¶10        Factors relevant to whether untimely disclosure should be allowed include (1) "the significance of the information not timely disclosed," (2) "the violation's impact on the overall administration of the case," (3) "the sanction's impact on the party," and (4) "the state of the proceedings when the party ultimately made the disclosure." Ariz. R. Crim. P. 15.7(c). Here, the trial court explained that the State was "dependent on another agency in another jurisdiction" to release the recordings, "act[ed] with due diligence" to obtain the recordings, and disclosed them "within three days" of receipt. In evaluating the late disclosure's impact on the defense, the court found that (1) the defense was "not able to state whether they attempted" to contact the callers in the 12 days between the disclosure and the start of trial and (2) "the timeliness of the disclosure [did] not change" how the defense was proceeding with their case.

¶11        Reyes does not challenge the court's findings. Instead, he relies on *State v. Krone*, 182 Ariz. 319 (1995), and *Jimenez v. Chavez*, 234 Ariz. 448 (App. 2014), to support his position that admitting the recordings was an abuse of discretion. But those cases are distinguishable. *Krone* involved an expert's video reenactment of "crucial" bite marks that purportedly matched the defendant to the victim. *Krone*, 182 Ariz. at 320, 322. Because the State did not disclose the "powerful and effective" video until three days before trial, our supreme court reversed the convictions and ordered a new trial because the late disclosure prejudiced the defense. *Id.* at 322–23. In *Jimenez*, this court held that preclusion was the proper sanction for the untimely disclosure of "critical" DNA evidence because the State failed to disclose it until the day before the trial. *Jimenez*, 234 Ariz. at 452–53, ¶¶ 21, 23.

¶12          Here, the 911 call recordings did not provide "crucial" or "critical" evidence against Reyes; instead, the recordings merely supported the other evidence presented by the State and cannot reasonably be considered foundational, "critical" evidence on which the State's case relied. *Jimenez*, 234 Ariz. at 452, ¶ 21. The State presented video evidence of Reyes entering the exit ramp and testimony from the specialist who observed the white truck driving the wrong way on the freeway. Neither the specialist nor the trooper observed any other white trucks on the freeway, and the trooper told the jury about his observations of Reyes' impairment, as well as the BAC results. Also, the 911 recordings were disclosed 12 days before trial, giving the defense more time than the *Krone* or *Jimenez* defendants had. Reyes has not shown the trial court abused its discretion in granting the State's motion in limine.

¶13          Reyes also argues the late disclosure violated his right to due process. Because this argument was not presented in the trial court, we review it for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005). To prevail under that standard, Reyes must first establish that trial error occurred. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). If error is shown, then we "must decide if the error is fundamental . . . [under] the totality of the circumstances." *Id.* "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* The first two prongs, if found, require a subsequent finding of prejudice; the third is inherently prejudicial. *Id.* To prove prejudice, a defendant must show "that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* at 144, ¶ 31. We find no error, much less fundamental error, in the trial court's decision to allow the State to present the 911 recordings at trial.

## CONCLUSION

¶14          We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR